LEARNED, P. J., and LANDON, J., concurred on the first ground, that if the action of the auditors is not binding, it is immaterial whether it was properly proved.

Judgment and order reversed, new trial granted, costs to abide event.

---

IN THE MATTER OF THE APPLICATION OF THE SARATOGA ELECTRIC RAILWAY COMPANY TO ACQUIRE A CERTAIN CROSSING OF THE RAILROAD OF THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY.

*Appeal from orders in proceedings for railroad crossings — allegation of the petition as to the consent of property owners — effort to agree.*

An order of the Supreme Court, appointing commissioners in proceedings to ascertain and determine the points of the crossings and intersections of the tracks of one railroad by another, affects a substantial right within the meaning of section 1356 of the Code of Civil Procedure. Such proceedings are not regulated by chapter 140 of the Laws of 1850.

The petition of a railroad company, incorporated under chapter 252 of the Laws of 1884, asking for the appointment of commissioners to ascertain the points of crossing another road, must allege that it has acquired the consent of one-half in value of the adjoining property owners and of the local authorities, to the construction of its road, in order to confer jurisdiction on the court to act thereon.

Negotiations relative to the crossing of one road by another, had with the general manager, vice-president and attorney of the road sought to be crossed, when such officers assume to negotiate for their company, and no notice is given to the person with whom they confer that they have not authority to act, constitute an effort to agree with such company within the requirement of the statute relating thereto.

APPEAL by the President, Directors and Company of the Delaware and Hudson Canal Company from an order made at a Special Term of the Supreme Court held in Saratoga county on April 15, 1890, which appointed commissioners to ascertain and determine the matters referred to in the application in the above-entitled matter.

*Edgar T. Brackett*, for the petitioner.

*Edwin Young*, for the appellant.

MAYHAM, J.:

This is an appeal from the order of a Special Term of this court appointing three commissioners on behalf of the Saratoga Electric Railroad Company to ascertain and determine the points of the crossings and intersections of the track of the electric railroad of said company, over and across the track of the Rensselaer and Saratoga Railroad, leased and occupied by the Delaware and Hudson Canal Company, also fixing the time and place of the first meeting of such commissioners.

The order was made upon the petition of the Saratoga Electric Railway Company, duly verified, the verified answer of the President, Managers and Company of the Delaware and Hudson Canal Company, and the proofs taken on the hearing of the motion before the Special Term. On the hearing of the motion the appellant filed various objections, which were overruled by the court.

The points urged on this appeal, upon which a reversal of the order is asked, are:

*First.* That the petition does not state facts sufficient to authorize the court to make the order.

*Second.* That the act of the legislature under which the petitioner claims to have been organized, and under which it claims the right to have commissioners appointed, is unconstitutional and void.

The respondent insists that the order of the Special Term in appointing commissioners is not appealable, and in support of that contention urges that the proceedings on this application are regulated by chapter 140 of the Laws of 1850, and the amendments to the same, which, it is claimed, form a complete system of procedure in cases of this character, which are in no way affected by the provisions of the Code relating to appeals from orders. No motion has been made to dismiss this appeal; and as an appeal has been taken in due form, and regularly brought on in this court for hearing upon the merits, it should not be dismissed unless it is entirely clear that this class of cases is excepted from the provisions of the Code relating to appeals to the General Term from orders of the Special Term.

Section 1356 of the Code of Civil Procedure provides that "an appeal may be taken to the General Term of the Supreme Court * * * from an order affecting a substantial right made in a special proceeding at a Special Term or a Trial Term of the same court."

This provision seems applicable to all orders in special proceedings affecting a substantial right, and if the appointment of commissioners, clothed with authority to hear and determine disputed questions between parties, affects a substantial right, then the order appointing them is, within this provision, appealable, unless restricted by the provisions of the general railroad act (chap. 140, Laws of 1850), which provides that the determination of the General Term of the Supreme Court upon appraisal of damages to land owners, shall be final and conclusive under that provision. Under that provision it has been held that no appeal lies from the judgment of the Supreme Court to the Court of Appeals. (*Matter of Delaware and Hudson Canal Company*, 69 N. Y., 209.) The same was held in *Matter of Prospect Park and Coney Island Railroad Company* (85 N. Y., 489). But it will be observed that these cases arose upon judgments of the General Term of the Supreme Court, on appeals from orders confirming reports of commissioners on appraisal of damages, which was made final by section 18 of chapter 140, Laws

of 1850, and in neither of the cases cited was the right of a party to appeal to the General Term, from an order of the Special Term appointing commissioners, discussed or decided, and except, in so far as the right to appeal is expressly, by the act of 1850, prohibited or abridged, it should be governed by the provisions of the Code of Civil Procedure, relating to appeals from orders, especially where no motion has been made to dismiss the appeal.

This conclusion brings us to the consideration of the question raised upon the merits in this motion, as we think the appointment of commissioners affected a substantial right within the meaning of section 1356 of the Code.

In the *Matter of Lockport and Buffalo Railroad Company* (77 N. Y., 558), the General Term and Court of Appeals entertained an appeal from the report of commissioners on a contest between railroads as to a crossing.

The allegation of the incorporation of the petitioner was sufficient, especially as the answer was not so framed as to put in issue the existence of the corporation. (Chap. 508, Laws of 1875.)

But the appellant insists that the petition of the relator was defective, in that it did not affirmatively appear from the same, that the relator had complied with the provisions of chapter 252 of the Laws of 1884, under which it claimed to have been incorporated. Section 1 of that act provides that " such corporation shall also have all the powers and privileges granted, and be subject to all the liabilities imposed by this act, or by the act entitled 'An act to authorize the formation of railroad corporations and to regulate the same,' passed April 2, 1850, and the several acts amendatory thereof, except as the said acts are hereby modified."

Under this provision of the act of 1884 it is insisted by the appellant that as the act of 1850 does not require the railroad corporation to acquire the consent of one-half in value of the adjoining property owners before it could construct, maintain or operate its road, and that that additional requirement is imposed by section 3 of chapter 252 of the Laws of 1884, that it is incumbent upon the relators, organizing under the last-mentioned act, to allege and prove that the requisite consents have been obtained as prescribed in that act, and that the procuring of such consent is a condition precedent to the construction, maintenance, operation or use of such railroad,

and that the appointment of commissioners is an act affecting the construction, maintenance and operation of the relator's railroad, and that the relator is not authorized to take that initial step towards construction without first obtaining that consent, proof of which must appear in the petition to confer jurisdiction upon the court to make any order condemning the land or affecting the rights of the appellant.

The provision relied upon reads as follows : "Any company organized as aforesaid, or any existing street surface railroad company or corporation heretofore organized for the purpose of building and operating a street railroad, may construct, maintain and operate, use and extend a railroad or branches on the surface of the soil through, upon and along any of the streets, avenues, roads or highways of such cities, towns and villages, and also through, along and upon any private property which said company may acquire for the purpose, and may also construct such switches, sidings, turnouts and turntables and suitable stands as may be necessary for the convenient working of such road, provided that the consent in writing of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be, after the passage of this act, first obtained."

Was the allegation that the petitioner had obtained the requisite consent under the provisions a necessary and material allegation to authorize the appointment of commissioners in this case ?

Clearly the petitioner would not be authorized to construct and operate its road until such consent was obtained. The company may construct and operate its road through and along such streets and avenues or highways of such city, town or village and also through, along and upon private property which said company may acquire for the purpose  *  *  *  "provided that the consent in writing of the owners of one-half in value of the property bounded on,  *  *  *  be after the passage of this act first obtained."

If the appointment of these commissioners for the purpose of condemning and getting the possession of the right to cross the appellant's road-bed, is a part of the petitioner's act of constructing or operating its road, then this consent was as much a necessary prerequisite as the organization or incorporation of its company,

and an allegation of that fact in the petition would be as material as an allegation of an incorporation or the location of the route or a failure to agree upon the terms of crossing, each of which are conceded to be necessary averments in the petition.   (*Matter of Lockport* v. *Buffalo Railroad Company, supra.*)

It may be conceded, as it is doubtless true, that the appointment of these commissioners is no part of the physicial construction or operation of the road, but it is a preliminary prerequisite to the physicial construction without which no physicial construction or operation of the road can be legally effected.

It is the initial step under the exercise by the legislature of the sovereign power of eminent domain by which the rights of one may be taken and used by another for a public purpose ; and the steps prescribed by the legislature which are necessary to invest the applicant with authority to invoke that power should clearly appear as the foundation of the proceedings.

If before the petitioner can exercise the franchise conferred by its charter the legislature has imposed conditions and restrictions, it must comply with such conditions as a preliminary to its enjoyment of the grant.

It is true that the general railroad act as amended, provides a statutory method of compelling the connection and crossing of railroad tracks by different companies; and corporations formed under chapter 252 of the Laws of 1884, are given by a section of that act the following powers :

" Such corporations shall also have all the powers and privileges granted, and be subject to all the liabilities imposed by this act, or by the act entitled 'An act to authorize the formation of railroad corporations, and to regulate the same,' passed April 2, 1850, and the several acts amendatory thereof, except as the said acts are herein modified. "   (Sec. 1, chap. 252, of 1884.)

One of the essential modifications applicable to the construction and operation of a railroad constructed under the act of 1884 is the condition above referred to, which is not found in the general railroad act, and before the petitioners can avail themselves of the provisions of the general railroad act that condition must be complied with.   That provision did not exist in the statute under which the decisions in the *Matter of Lockport and Buffalo Railroad*

*Company* (*supra*) was made, and hence what the court in that case held to be sufficient in the petition does not control in this case.

In that case it was not essential that the petitioners obtained the consent of the one-half in value of the adjoining property owners. It was, therefore, quite enough for the petition to show the incorporation, the location of the road, and that it crossed the other road, and that terms of crossing could not be agreed upon between the parties.

In that case the corporation, the location of the route and the failure to agree, authorized the condemnation of property and the construction of the road.

In this case another and additional prerequisite exists, just as essential to the enjoyment of the right, which is not alleged.

In that case it was held that the omission to allege in the petition that the parties had failed to agree would be fatal to the petitioner's case, and the court says : " The petitioner had no right to resort to the court, until a failure to agree as to the matter specified. Such failure was a condition precedent to any standing in court ; and there could be no failure or inability to agree, within the meaning of the statute, until some efforts to agree had in good faith been made." (*Matter of Lockport and Buffalo Railroad Company, supra,* 563.)

If an allegation in the petition of failure to agree in that case " was a condition precedent to any standing in court " for an equally strong reason, it would seem that the allegation of the consent required by the statute should be contained in the petition in this case, for in this case the petitioner can avail itself of the statutory privileges, *provided* it shall, after the passage of the act of 1884, procure the consent in the manner prescribed by that act.

This condition does not appear from the petition or proof to have been complied with, and, without a compliance with it, it would seem that the petitioner acquired no standing in court which would authorize the court to appoint the commissioners against the appellant's objection. The *Matter of the People's Railroad Company* (112 N. Y., 578) was an application to the court for leave to construct the railroad without the requisite consent, and for the appointment of commissioners to determine that question, and does not seem to apply to a case like the one at bar.

It is also insisted in this case by the appellant that the petitioner made no effort to agree with the appellant ; in fact, that the negotia-

tions with the general manager, vice-president and attorney was not an effort to agree with the company. We cannot agree with the appellant in this contention.

The public are compelled to deal with corporations through their ostensibly authorized officers and agents; and while there are many acts which can only be done by the board of directors or executive committee, still, in a matter of this kind, when the officers and agents assume to negotiate for the company and give no notice to the person with whom they confer that they are wanting in authority to act; the company having allowed them to act for it, have invested them with apparent authority, upon which the public have a right to rely.

The conclusion we have reached seems to render it unnecessary for us to consider the remaining and, perhaps, the graver question raised by the appellant of the constitutionality of the act of 1884, so far as it purports to import into its provisions, the provisions of the general railroad act relating to the acquiring of privileges under the right of eminent domain by the condemnation of property or the right to its use.

Without determining the constitutional question raised, we are of the opinion that the order should be reversed.

LEARNED, P. J., and LANDON, J., concurred.

Order reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.