OLIVER W. INGERSOLL, Appellant, v. NASSAU ELECTRIC RAILROAD COMPANY, Respondent.

*Injuries sustained by one person in common with the general public — cannot be redressed in an action brought by him — street railroads — § 102 of chap. 565 of the Laws of 1890, as amended by chap. 693 of 1894 — § 18, article 3, of the New York Constitution applies only to a new street railroad.*

Injuries sustained by one person in common with the general public cannot be redressed in a private action brought by him.

A street railroad company may operate its road in any legal manner consonant with the purposes for which it was organized. It may hire out its line, or it may permit other railroad companies to run their cars over its tracks by authority of section 102 of chapter 565 of the Laws of 1890, as amended by chapter 693 of the Laws of 1894.

The provision in the Constitution of the State of New York (Art. 3, § 18), which provides that "no law shall authorize the construction or operation of a street railroad, except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained," was directed against the construction and operation of a new street railroad without the proper consents, and there is neither a constitutional nor a statutory prohibition against the use of the tracks of one railroad by the cars of another without such consents.

PRATT, J., dissenting.

APPEAL by the plaintiff, Oliver W. Ingersoll, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 12th day of January, 1895, upon the decision of the court rendered after a trial at the Kings County Special Term.

*Wood & Hill,* for the appellant.

*John J. Allen,* for the respondent.

DYKMAN, J.:

The plaintiff in this action is the owner of real property on the south side of Bergen street, between Rogers avenue and Nostrand avenue.

The suit is instituted for the procurement of an injunction to restrain the defendant from constructing, operating or maintaining

any surface railroad or tracks through Bergen street, between the avenues above mentioned.

Bergen street, between those two avenues, is included in the route of the defendant's railroad, but there is in that street already a double-track railroad owned and operated by the Atlantic Avenue Railroad Company, and the defendant has obtained the permission of that company to run the cars of the defendant over the tracks of the Atlantic Company on that block.

At Rogers avenue and Nostrand avenue curved tracks are to be laid to connect the defendant's track with the track of the Atlantic Company, but the complaint contains no claim of injury from the construction of such connecting track.

The action is based upon the Constitution and the statute, and the constitutional provision invoked is this : "No law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, 'and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained." (Art. 3, § 18.)

Section 91 of the Railroad Law (Chap. 565 of the Laws of 1890), as amended by chapter 434 of the Laws of 1893, contains substantially the same interdiction.

The complaint alleges that the defendant, in pursuance of the consent of the common council of the city of Brooklyn, is constructing and preparing to maintain and operate its tracks or road on Bergen street, between Rogers and Nostrand avenues, and that such construction and operation would irretrievably injure the value of the plaintiff's property and infringe his rights.

The facts, however, fail to sustain those charges of the complaint, because, as we have seen, the defendant is not constructing, and does not propose or intend to construct or operate, its tracks or road on Bergen street at all.

The tracks of the Atlantic Avenue Company are laid there, and we must assume that the consent of the property owners and of the local municipal authorities has been obtained for the construction and operation of that road through Bergen street. All the constitutional and statutory requirements are, therefore, satisfied.

The Atlantic Company may operate its road in any legal manner consonant with the purposes for which it was organized. It may hire out its line, or it can permit other railroad companies to run their cars over its tracks according to statutory provisions upon that subject. (§ 102 of chap. 565 of the Laws of 1890, as amended by chap. 693 of the Laws of 1894.)

The legal use of the franchises of the Atlantic Company is untrammeled. The defendant does not intend to appropriate Bergen street to any new use. The interests of the locality have been consulted in relation to the construction and operation of the railroad already there, and the street is to be no further obstructed. The defendant does not intend to lay down or operate its railroad tracks in that street.

It is quite conceivable that the right to use the tracks of the Atlantic Company and operate its road may be transferred to another company by a voluntary or forced sale; but it will not be contended that any new consents from property owners or local authorities would be necessary in such a case to the continued operation of the railroad by a new transferee of the property and franchises of the old company.

The right to exercise the franchises of the Atlantic Company became vested upon the procurement of the necessary consents. (*Matter of Application of Rochester Electric Ry. Co.*, 123 N. Y. 351.)

The constitutional inhibition under consideration is leveled against the construction and operation of a new railroad without the proper consents, but there is neither a constitutional nor a statutory prohibition against the use of one railroad by the cars of another without such assents.

Moreover, the question seems to be set at rest by the decision of the Court of Appeals in the case of *The People* v. *Brooklyn, F. & C. I. R. R. Co.* (89 N. Y. 75).

It was there decided that one railroad company could run its cars over the road of another compay without obtaining the constitutional consents.

In any view, however, the defendant intends to do nothing of which the plaintiff can complain in this suit. To sustain his action he must show that the defendant is doing or intends to do some-

thing in Bergen street that will be of special and peculiar injury to him or his property. This is not a taxpayer's suit to prevent waste or injury, or a public wrong. It is a private action to restrain the defendant from doing an act in a public street in a great city, which is under the control of the municipal authorities for the benefit of the whole people, and in which the plaintiff has no peculiar interest. He does not stand for the community. He must show an infringement of some private right, or, in other words, he must show that the defendant is doing or is about to do some act in Bergen street from which he will sustain some injury peculiar to him or his property. Injuries sustained by the plaintiff in common with the general public cannot be redressed in a private action by him.

It already appears that the defendant has done nothing in Bergen street, and only intends to run its cars in that street over the railroad tracks now laid down and in use. No change is contemplated, no additional space is to be occupied, and it is impossible to see how the plaintiff can sustain any peculiar injury from the use of the tracks which the defendant proposes to make.

The judgment should be affirmed, with costs.

BROWN, P. J., concurred.

PRATT, J. (dissenting):

I have been unable to satisfy my mind that the act of 1890 (Chap. 565) and the amendments of 1893 and 1894 do not prohibit any street railway company, organized under the several laws of 1890, from *operating* any railway in any street except on condition that it shall first obtain the requisite consent of property owners on the street. The defendant was organized under the General Railroad Law of 1890 (Chap. 565). Its route runs through Bergen street in front of plaintiff's premises. It has obtained the consent of the local authorities to *construct* and *operate* its road, but it has obtained no consent of any property owners on Bergen street. The consent of the local authorities was conditioned upon its compliance with all the provisions of the " Railroad Law " and acts amendatory thereof. The Railroad Law requires consent of one-half in value of the property owners on the several streets on its route. The contention of the defendant is that such consents were unnecessary under that law, because it does not propose to *construct* any railway on Bergen street,

but merely to *use* the tracks of the Atlantic Avenue Railway Company, already existing in that street, under a contract with the latter. As I construe the statute, the prohibition extends disjunctively to the building, extension or operation of street railways. It forbids the operation of a street railway quite as much as its construction or extension. Nor does it matter that the defendant does not propose to construct *in* Bergen street, or that the Atlantic Avenue railway was constructed before these special statutory provisions, or even the constitutional prohibition. The acts under which the Atlantic Avenue Company was organized rendered it subject to future legislation. The constitutional prohibition was aimed at the future. We find such future legislation in the acts of 1890, 1893 and 1894, and in the Railroad Law, which, in effect, prohibits any street railway company organized since those acts took effect from *operating* a railway without such consent, unless, perhaps, as the successor of the owner of the pre-existing franchise of the pre-existing road. True the Railroad Law authorizes a contract by one company for the use of a part of its tracks by another, but that is subject to the other provisions of the law. Such a contract may be lawful, but the moment the hirer of the track attempts to use it, then, *quoad hoc*, it begins the *operation* of that railroad. For all practical purposes the portion thus used becomes the road of the hirer, and the act of running cars over it is the " operation of the road." Let us test this question by an easy illustration of the design of these prohibitions, both in the Constitution and in the statute. Take the case of a railway constructed and operated by consent of local authorities and property owners. What did the property owner consent to ? Was it that his street should be thrown open to any use of the tracks to which the consentee might agree? I think not. He consented to the construction and operation of the railroad proposed by the company which applied for and obtained the consent; a railroad having definite termini, a recorded route and plans; something which the judgment of the property owner could comprehend and upon which he might act intelligently; something from which he could form some estimate of the probable advantage of the scheme to his property and the probable burden or servitude which it would impose.

It is idle to say that any one consenting to the construction and operation of, say, the Bergen Street railway with its specific route, plan, termini, etc., could have contemplated that the passenger traffic of a new cross-town line, from some grand central depot connection to the seashore, should be poured over that track in front of the consentor's door. He might well have consented to the one, thinking that it would be an advantage to his property, when the other, either alone or in conjunction with the former, would be a positive injury. Instead of the ordinary street railway traffic involving one car in five or ten minutes, there might be as many cars as congregate about the City Hall square; for, if this sort of thing may be done for one railway company, it may be done for a dozen. Thus a totally uncontemplated burden or servitude would be imposed on the consentor's property. His consent would be wholly misconstrued.

This, to my mind, illustrates the design of these constitutional and statutory provisions, namely, to give the property owner some sure guaranty against the encroachment of street railway corporations upon private property. Such a ruling in the case which I present would be simply to whittle away to nothing that which was intended to be a safe and reliable guaranty, namely, the voice of a majority in value of the property in any street. As I look upon this case, the defendant and this Atlantic Avenue Company, at the commencement of this suit, stood in precisely the legal relation to property owners which I put by the foregoing illustration. The defendant proposes to operate a part of its *line* of railroad, and that which, *quoad hoc,* is to become its railroad and railroad track, in direct violation of the spirit, if not of the very letter of these statutory and constitutional prohibitions, and without complying even with the conditions on which the consent of the local authorities was given.

These views lead to a reversal of the present judgment and to a new trial, with costs to abide the event of the action.

Judgment affirmed, with costs.