(15 App. Div. 195.)

COLONIAL CITY TRACTION CO. v. KINGSTON CITY R. CO. et al.

(Supreme Court, Appellate Division, Third Department. March 3, 1897.)

1. STREET RAILROADS — USE OF TRACKS OF ANOTHER COMPANY — CONSENT OF LOCAL AUTHORITIES.

The requirement of the consent of the local authorities to the "building or operation" of a street surface railroad (Const. art. 3, § 18; Laws 1895. c. 545, amending Railroad Law, § 91) applies to the use of the tracks of one street-railroad company by another as authorized by Laws 1894, c. 693 (amending Railroad Law, § 102), providing that the right to such use may be granted by the supreme court.

2. SAME—RIGHT TO GIVE USE OF TRACKS.

Such consent is not rendered unnecessary by the fact that the railroad company whose tracks are sought to be used has, because organized before the enactment of the railroad law, the right to permit the use of its tracks; since it can only be compelled to do so by proceedings under Laws 1894, c. 693, to which the consent of the local authorities is prerequisite.

Parker, P. J., and Landon, J., dissenting.

Appeal from special term, Ulster county.

Proceeding by the Colonial City Traction Company against the Kingston City Railroad Company and others to ·obtain the right to the use of certain tracks. From a judgment entered on a decicion of the trial judge in favor of petitioner, defendant railroad company appeals. Reversed. Reargument denied.

The petitioner is a corporation organized April 22, 1896, for the purpose of constructing, completing, .and operating a street surface railroad in the city of Kingston; and it acquired by purchase upon a foreclosure sale all the property, rights, and franchises of the Colonial City Electric Railway Company. Such latter company was organized as a street surface railway company, and was operating about 4½ miles of electric railroad in the city of Kingston at the time of such sale. About one-half of such road was upon the easterly and the other half upon the westerly end of the city. The system of tracks upon the east end is not connected with that upon the west end, because, in order to do so, it was necessary to cross the tracks of the West Shore and of the Delaware & Ulster Railroads at points where each of such roads had five tracks; and the company had not been able, under the statute (section 2, c. 239, Laws 1893), to effect a crossing at grade of such roads. The defendant the Kingston City Railroad Company is a corporation organized June 7, 1879, and is now, and for a long time has been, operating a surface railroad in such city, by electricity, and occupies Broadway with its tracks. Such tracks cross the West Shore Railroad tracks in Broadway at grade. The petitioner, by extending its tracks through Broadway from Prince street on the east to Cedar street on the west, could connect its road on the east with that on the west by crossing only three tracks of the West Shore road, and avoid crossing at all the Ulster & Delaware road. After obtaining the property at foreclosure sale, the petitioner applied to the city authorities for leave to extend its road through Broadway, in order to make such connection. The right to do so was refused, and the petitioner thereupon commenced this proceeding under the provisions of section 102 of the railroad law, as amended by chapter 693, Laws 1894, for leave to use the tracks, poles, and wires of the Kingston City Rail-

road Company through Broadway between Prince and Cedar streets, a distance of about 900 feet, for the purpose of making such connection. It made no attempt to obtain the consent of any of the adjacent owners of property upon Broadway, either to construct its own road upon such street or to use that of the defendant, and had failed, as above stated, in its application to the city authorities. The court at special term granted to the petitioner the right asked for, and appointed commissioners as provided by such section. And from such judgment the Kingston City Railroad Company has appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

A. T. Clearwater, for appellant.
G. D. B. Hasbrouck, for respondent.

HERRICK, J.   The proceeding sought to be reviewed here is, in effect, a condemnation proceeding for the purpose of securing the right to use the defendant's property. Before a corporation can resort to such condemnation proceedings, it must have complied with all the statutory requirements necessary to entitle it to take such proceedings. It would seem to be a self-evident proposition that, before a corporation can institute legal proceedings to secure the use of property, it should first secure the right to use such property after it has obtained it. If it is necessary to procure the right to construct or operate a road upon or over a given route, then, before it can condemn property upon that route, it must procure the right to the use of that route. In re Rochester Electric Ry. Co., 123 N. Y. 351, 25 N. E. 381; In re Saratoga Electric Ry. Co., 58 Hun, 287, 12 N. Y. Supp. 318. In this case the plaintiff has received from the city of Kingston consent, commonly called a "franchise," to build and operate a road through certain specified streets of such city. Broadway, from Prince street to Cedar street, is not one of such streets.

The constitution (article 3, § 18) provides that:

"No law shall authorize the construction or operation of a street railroad, except upon condition that the consent of the owners of one half in value of the property bounding on, and the consent also of the local authorities having control of that portion of the street or highway upon which it is proposed to construct or operate such railroad be first obtained."

And it is further provided that, in case such consent cannot be obtained, then application may be made to the appellate division of the supreme court. Section 91 of the railroad law, as amended by chapter 545 of the Laws of 1895, provides that a street surface railroad, or the branches thereof, shall not be extended or operated unless "the consent of the local authorities having control of that portion of a street or highway upon which it is proposed to build or operate such railroad shall have been first obtained." Another section of the law that it is important to consider in this case is section 102 of the railroad law, as amended by chapter 693 of the Laws of 1894, which provides that:

"No street surface railroad corporation shall construct, extend or operate its road or tracks in that portion of any street, avenue, road or highway, in which a street surface railroad is or shall be lawfully constructed, except for nécessary crossings, or, in cities, villages and towns of less than one million two hundred and fifty thousand inhabitants, over any bridges without first ob-

taining the consent of the corporation owning and maintaining the same, except that any street surface railroad company may use the tracks of another street surface railroad company for a distance not exceeding one thousand feet, and if in a city having a population of less than thirty-five thousand inhabitants, except Long Island City, for a distance not exceeding fifteen hundred feet, and in cities, villages and towns of less than one million two hundred and fifty thousand inhabitants, shall have the right to lay its tracks upon, and run over and use any bridges used wholly or in part as a foot-bridge, whenever the court upon an application, etc., shall be satisfied that such use is actually necessary to connect main portions of a line to be constructed or operated as an independent railroad, or to connect said railroad with a ferry, or with another existing railroad, and that the public convenience requires the same, in which event the right to use shall only be given for a compensation to an extent and in a manner to be ascertained and determined by commissioners to be appointed by the courts as is provided in the condemnation law, or by the board of railroad commissioners in cases where the corporations interested shall unite in a request for such board to act."

There is no conflict between the provisions of the constitution and section 91 and section 102 of the railroad law. The provisions of the constitution and of section 91 of the railroad law are for the purpose of protecting property owners, and for preserving in local authorities control over the streets and highways within their jurisdiction. The provisions of section 102 are for the purpose of protecting the rights of railroad corporations already in existence; and the constitution and these two sections must all be construed together, so as to make one harmonious and complete law.

The plaintiff relies upon section 102 of the railroad law as entirely regulating its rights in this case, and the opinion of Mr. Justice Parker coincides in its contention that, where a railroad has a franchise to construct and operate a road through a public street, the consent of the municipal authorities and property owners to the construction and operation of such road renders unnecessary the giving of any such consent for the operation of any other road through the street and over the tracks of the first road. That contention, I think, is erroneous. The prohibitions of the constitution, and of section 91 of the railroad law, extend, I think, to every part of the road and to every street or part of a street, and refer not only to the construction of the road, but to its operation. The constitution reads, "No law shall authorize the construction or operation of;" thus plainly recognizing that the construction and operation of a road are separate and distinct things. The former constitution contained substantially the same provisions, "but no law shall authorize the construction or operation of a street railroad," etc. Article 3, § 18. We are not at liberty to place any construction or interpretation upon language so plain, and make it read in the conjunctive instead of the disjunctive. The makers of the constitution are supposed to have understood the force and meaning of the words used by them, and to have used common, unscientific words in their ordinary meaning, and, in the construction of sentences, to have intended to employ the ordinary rules of grammar. Each section is supposed to be the result of careful deliberation, not only as to substance, but as to form. In this case the reading is clear, and is, therefore, not the subject of interpretation. It forbids, then, the operation of a street railroad with-

out first having obtained the consent of the local authorities. The operation of a railroad is the running of its cars. The plaintiff proposes to run its cars through Broadway from Prince to Cedar street. The claim that running its cars through the portion of the street in question will not constitute an operation of a road within the meaning of the constitution or statute, because it will run its cars over the tracks of another company, cannot be sustained. When, by process of law, or by leave or consent from the other company, it obtains the right to run over its tracks, that right constitutes a part of its road, just as much as any other part. What effect giving this consent to the construction or operation of one railroad by the property owners may have upon the necessity of procuring their consent to the operation of another over the same tracks, I shall not discuss; the operation of another road or roads may or may not impose an additional burden upon their property. So far as the constitution and the railroad law refer to the con‑ sent of property owners, it is to protect property rights; so far as they refer to local authorities it is to enable them to control the streets and highways, and keep them reasonably safe, and free for the use of the general public. The obstruction of the streets, and the increase of danger to the ordinary travelers, either pedestrians or those using the ordinary street or road vehicles, is not caused by the laying of the tracks, but by the running of the cars; and such obstruction and danger, it is obvious, will be increased in proportion to the increased number of cars going over the road. There is a great difference between the obstruction and danger to travelers by a road through a street over which a car passes every 15 minutes, and one over which a car passes every 2 minutes; and while, perhaps one imposes no more substantial burden upon the property owners than the other, it does interfere more with the ordinary use of the street or highway, and hence the reason existing for requiring the consent of the local authorities in the one case applies in the other. The plaintiff relies upon the provisions of section 102 of the railroad law as a substitute or alternative for the provisions of section 91, where a road has been once constructed through a street or highway; and contends that thereafter it is simply a question between the two companies. I do not so understand it. It is an addition to, not a substitute or alternative for, section 91, and is intended for the protection of existing companies.

Under the provisions of section 91 and of the constitution, standing alone, the property owners and local authorities, by giving their consent, could authorize the construction and operation of street railways through streets already traversed by another road, regardless of the rights or convenience of the latter, and in the interest and for the protection of such roads the law has provided that, in addition to the consents provided by section 91, the new road must procure the consent or take the proceedings provided by section 102. This construction saves and protects the rights and privileges of local authorities and of existing roads. Under it the local authorities cannot, by combining with a new company, arbitrarily grant to it the use of the road of a company already in existence,

regardless of the rights or interests of such company; nor can a company already operating a road, by agreement with another road or roads, grant to it or them the rights and privileges conceded to it by the local authorities, and thus indefinitely increase the obstruction and dangers to travel upon the streets or highways, regardless of the wishes of the local authorities. The consent or franchise to operate a street surface railroad through the streets of a city is a thing of value, and for which municipal corporations have a right to demand remuneration. And when this consent or franchise has been given to one corporation, it is given to it for its own use, not for the purpose of dividing it with or farming it out to others for its own profit and emolument, regardless of the city, or its rights or wishes. In this particular case it may make no practical difference to the city of Kingston whether one or two or more roads are operated through Broadway between the points in question. The cars may pass so infrequently as not to increase the obstruction or dangers to travel to any substantial extent, and the city of Kingston may have never required any remuneration for its consent or franchise, and it may not be of any substantial value in this case; but the principle involved is a general one, and is applicable alike to the large and small cities of the state. It must be apparent that while in one city, or through a particular street in a city, it may make no practical difference to the community whether one or more roads are operated through the same street, and the value of the franchise to do so may not be substantial in amount to any one company or to the city, yet in another city, or in another street, the operation of several lines of road through the same street or portion of a street may result in a practical obstruction to all other kinds of travel, and the value of the franchise for any road to operate through the streets or portions of a street in such city may be of great value to the corporation operating such road, and for which the city is entitled to and may exact remuneration. I think, therefore, that according to the strict reading of the constitution and of the railroad law, and in accordance with the intent and purpose of the constitution and such law, and to sustain the principle thereof, it must be held that, before a street surface road has the right to operate its road through any street in a city, it must procure the consent of the local authorities, even though another company is already operating its road through such street; and that it must procure the right to the use of such street as a part of its route before it can commence proceedings which are in the nature of condemnation proceedings, to secure the right to use the property of another company upon and as a part of such route. I have read the case of Ingersoll v. Railroad Co., 89 Hun, 213, 34 N. Y. Supp. 1044, and for the reasons above stated I am entirely unable to agree with the holding of the court that "the constitutional inhibition under consideration is leveled against the construction and operation of a new railroad without the proper consents, but there is neither a constitutional nor a statutory prohibition against the use of one railroad by the cars of another without such assent." If such use of the tracks of another company

takes its cars through a street or streets or portion of a street which the local authorities had not authorized it to use, it comes within the prohibition of the constitution and the statutes, whether it is a new or an old road, provided its right to use the tracks of the other company was not obtained prior to or pursuant to rights vested before the adoption of the section of the constitution in question.

It has been held that the constitutional provision excludes a part as well as a complete railroad. In re Metropolitan Transit Co., 111 N. Y. 588–603, 19 N. E. 645. And surely the principle upon which that rests applies equally whether the part of a road is part of a new or part of an old road. It is the new or additional use of the street that is prohibited being made without consent, and the use is new or additional whether the company is new or old. It will be observed, also, that the case of Ingersoll v. Railroad Co., did not involve the decision of the question I have here discussed; that is, the consent of local authorities. It was the right of the property owners, and the necessity of procuring their consent, that was in question there. The case of People v. Brooklyn, F. & C. I. R. Co., 89 N. Y. 75, does not sustain the contention that one company can procure the right to use the tracks of another, and run its cars over such tracks without obtaining the consent of the local authorites to operate its road through the street where such tracks are laid, unless such right was procured pursuant to rights secured prior to the adoption of the provision of the constitution in question. The court in that case held that the constitutional provision was prospective. "The whole scope of the section is to dictate to the lawmaking power what it may or may not do, and not at all affect or act upon past legislation which at the time was entirely lawful." And the defendant having, by contract with companies which, under laws passed prior to the adoption of this provision of the constitution, had the right to lease the use of their tracks, obtained from them the right to use their tracks, it was not necessary to obtain the consent of the local authorities. No such state of facts is presented in this case. There is no claim made here that either company was organized, or has succeeded to any claim or right that originated, before the adoption of the constitutional provision in question. The implication from the last-cited case is that, except in cases where the right has been secured pursuant to laws passed prior to 1875, consent must be secured from local authorities to operate a road over the tracks of another, the same as if no railroad had theretofore been operated through the street in question.

It seems to me, therefore, that the judgment appealed from should be reversed, and the complaint dismissed, with costs.

PUTNAM, J., concurs.

MERWIN, J.   I concur on the ground that the plaintiff, in the absence of any right under section 91 of the railroad law to extend its route, or operate its road over the locality in question, is not

in a position to demand, under section 102, the use of the tracks of the defendant.

PARKER, P. J., and LANDON, J., dissent.

On Motion for Reargument.

(March 12, 1897.)

HERRICK, J. A motion is made for a reargument in this case upon the ground that the court, in commenting upon the case of People v. Brooklyn, F. & C. I. R. Co., 89 N. Y. 75, and showing the distinction between the facts in that case and the one at bar, overlooked the fact that one of the companies here succeeded to the rights of a company that was organized prior to the adoption of that section of the constitution which prohibits the extending or operating of surface railroads through the streets of cities without obtaining the consent of the municipal authorities. That fact appears in one of the exhibits in the case, and was overlooked by the justice writing the prevailing opinion, and the attention of the court was not called to it either in the briefs or by the arguments of counsel. I fail to see, however, that such fact makes any difference in the conclusion heretofore arrived at. In the case of People v. Brooklyn, F. & C. I. R. Co. the defendant had, by contract, been authorized to operate its trains over the road of another company, which had acquired the rights of a railroad company organized prior to the adoption of the section of the constitution under consideration, and which had the right to lease its road or tracks to other railroad companies. The plaintiff in this case occupies no such position as the defendant did in that case. The defendant in this case, not the plaintiff, has succeeded to the rights and franchises of a railroad corporation organized prior to the adoption of said section of the constitution. The plaintiff was organized in 1896, and succeeded to the rights of a company organized in 1893, and is, therefore, subject to the restrictions of the constitution and railroad law as they existed in 1893; and by such constitution and law it was prohibited from extending or operating its road without the consent of the local authorities, and whatever right the defendant may possess to lease the use of its tracks to other railroad companies cannot be asserted for it, and in its behalf, by another corporation; neither can such right be asserted in antagonism to it. The only authority for the plaintiff's proceeding is the "Railroad Law," so called, passed in 1890, known as "Chapter 39 of the General Laws," and its amendments; and that law provides simply for the condemnation of the right to use the tracks, not to condemn the franchises or any other rights of the defendant, nor to coerce it into exercising its right to lease its tracks to any other railroad company; and any rights to be obtained by the plaintiff in these proceedings will be obtained under and by force of such law, and not under or by force of the laws under which the defendant or its predecessor was organized, or by force of anything which the defendant has voluntarily a right under its charter to do. What the plaintiff can obtain is not a

"coerced lease," so to call it, under which it can exercise all the rights and privileges that it is assumed the defendant possesses, and has the right to grant by lease or contract, because it obtained them prior to 1874, but simply those rights which the railroad laws in force in 1893, and as since amended, can, under the constitution, confer. And under the constitution the very first step is to obtain the consent of the local authorities. The statute can confer no right until that consent is obtained. Counsel having, upon the motion for a reargument, fully presented their views, there is no occasion for a further hearing; and, seeing no sufficient reason to alter the decision heretofore made, the motion should be denied.