(23 Misc. Rep. 373.)

RODDY v. BROOKLYN HEIGHTS R. CO. et al.

SCHMIDT v. BROOKLYN CITY & N. R. CO. et al.

(Supreme Court, Special Term, Kings County.    April, 1898.)

1. STREET RAILROADS—CONTRACTS—USE OF TRACKS OF OTHER ROADS—VALIDITY.
Laws 1839, c. 218, gave any railroad company power to contract for the use of the tracks of another company. This act was amended and re-enacted in Railroad Law 1890, § 78 (Laws 1890, c. 565), which provided that any railroad corporation in this state might contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same as prescribed in the contract. Laws 1884, c. 252, § 15, authorized any street surface railroad corporation to lease or transfer to any other such company the right to use any portion of its tracks, except companies owning or operating parallel roads in cities of over 300,000 population, but did not repeal chapter 218, Laws 1839, supra. Const. 1874, art. 3, § 18, provided that no law should authorize the construction or operation of a street railroad, except on condition that the consent of property owners or of the supreme court be first obtained, which provision was re-enacted in the same language in Const. 1894, art. 3, § 18. *Held,* that the constitutional inhibition was prospective in effect, and did not affect the act of 1839; and, that act not being repealed by chapter 252, Laws 1884, a street-railroad company incorporated prior to the enactment of Const. 1874 might legally contract for the use of the tracks of another company without first obtaining the consent of abutting owners or of the supreme court.

2. SAME—STATUTES—REPEAL.
Laws 1839, c. 218, granting to any railroad corporation the right to contract with any other railroad company for the joint use of their respective tracks, and thereafter use the same as prescribed in the contract, was substantially re-enacted as a part of Railroad Law 1890, § 78 (Laws 1890, c. 565), and by section 180 of that act was repealed. *Held,* that, the provisions of the two acts being substantially the same, section 78 of the railroad law must be construed as a continuation of the act of 1839, and not as a re-enactment thereof, notwithstanding the repeal.

3. SAME—VESTED RIGHTS.
But, even if such re-enactment was not a continuation of the prior statute, the right acquired thereby, by a railroad company incorporated prior to its repeal, was a vested right, pertaining to its franchise, and was not affected by such repeal, since Railroad Law 1890, c. 565, § 181, provided that any accrued or vested right should not be affected or impaired thereby, but might be enforced to the same extent as if such law had not been repealed.

4. SAME.
Railroad Law 1890, § 78 (Laws 1890, c. 565), providing that any railroad corporation in the state may contract with any other such corporation for the use of their respective roads, and thereafter use the same under the contract, applies to street surface companies.

Actions by Hugh V. Roddy, Jr., against the Brooklyn Heights Railroad Company and another, and by Valentine Schmidt against the Brooklyn City & Newtown Railroad Company and others. Motion in each action for an injunction pendente lite. Denied.

Morris & Whitehouse, for plaintiffs.

Chas. A. Collin, William C. Trull, and Wm. N. Dykman, for defendants.

MADDOX, J.    A motion is made by the plaintiff in each action for an injunction pendente lite, i. e. in the Roddy Case to enjoin the operation by the Heights Company of its cars upon the tracks of

886   52 NEW YORK SUPPLEMENT   (Sup. Ct.

and 86 New York State Reporter.

the Newtown Company on Washington street in front of the abutting premises of that plaintiff, and in the Schmidt Case to restrain the operation by the Newtown Company and by the Coney Island Company of their cars upon the tracks of the Heights Company on Fulton street in front of the abutting property of Schmidt, upon the ground that the constitutional and statutory conditions, now in force, not having been complied with, such operation is unlawful and an invasion of plaintiffs' rights. The defendants are domestic street surface railroad corporations, operating their cars by the overhead trolley system. The Newtown Company and the Coney Island Company were organized, respectively, in May and December, 1860, under General Railroad Law 1850, c. 140, and the Heights Company was incorporated in 1887, under General Railroad Law 1884, c. 252. The Heights Company acquired, as lessee, under a lease made in 1893, the railroads, franchises, property, and rights of the Brooklyn City Railroad Company, a domestic street surface railroad corporation organized, in December, 1853, under General Railroad Law 1850, c. 140, and has since June, 1893, maintained and operated such roads, including the double-track road on Fulton street, in front of Schmidt's property, and also that on Sands street, in front of the Brooklyn Bridge entrance. Said roads on Fulton and Sands streets, joining at the junction of those streets, had been previously constructed and operated by the said Brooklyn City Railroad Company, pursuant to chapter 77 of the Laws of 1854, from about 1854 until the lease thereof to the Heights Company, in 1893. The Newtown Company constructed its Washington street route about 1872, pursuant to chapter 165 of the Laws of 1872, and maintained and operated the same until 1897, when it leased its railroads, franchises, property, and rights to the Coney Island Company, which latter company has since operated the same, including the double-track road on Washington street, in front of Roddy's property, to and crossing Sands street, at the Bridge entrance. In 1897 these defendants and the Nassau Railroad Company, also a domestic street surface railroad corporation, by contracts with the bridge trustees, acquired the right to run and operate some of their cars, for the transportation of passengers between the boroughs of Manhattan and Brooklyn, upon and over the roadways of the bridge, using the northerly roadway in going to the borough of Manhattan, and the southerly roadway in returning to Brooklyn, such cars entering and leaving the respective roadways at their intersection with Sands street, and the only tracks connecting with such roadways are the Sands street tracks of the Heights Company, which connect with both, and the Newtown Company's tracks on Washington street, connecting by a switch or siding with the northerly roadway only.

The defendants, prior to the commencement of these actions and before the Newtown Company's lease to the Coney Island Company, by contract agreed upon a plan for the operation of their cars in crossing the bridge, and, among other things, that the Heights Company shall have the use of the Washington street tracks of the Newtown Company, in front of Roddy's property, and the right to operate thereon its bridge-crossing cars bound for the borough of Man-

hattan, thereby connecting with the northerly roadway of the bridge, and the Newtown and the Coney Island Companies to have the use of the Fulton street tracks of the Heights Company, in front of Schmidt's premises, and the right to operate thereon their bridge-crossing cars returning from the borough of Manhattan. It is that right to use the tracks of another company, and to operate cars thereon, without first obtaining the consents of the municipal authorities and of the abutting property owners, or in lieu of the property owners' consents the approval of the supreme court, that the plaintiffs challenge, and the same questions are presented on both motions.

Chapter 140 of the Laws of 1850 required the consents of a majority of the abutting property owners to the construction of a railroad in cities, but no question has been raised here as to the right of the defendants to operate their cars on their respective roads. The tracks are on those streets, and we must assume, in view of the length of time the respective roads have been so operated and the fact that the construction thereof was prior to the constitutional amendment of 1874, in the absence of some proof to the contrary, that the statutory requirements operative at the time of such construction have been complied with.

By chapter 218 of the Laws of 1839 it was enacted that "it shall be lawful for any railroad corporation to contract with any other railroad corporation for the use of their respective roads and thereafter to use the same in such manner as may be prescribed in such contract"; and that act was not amended, and remained unrepealed until 1890 (Laws 1890, c. 565, § 180), when its provisions were re-enacted in section 78, Railroad Law, which, as since amended (Laws 1892, c. 676; Laws 1893, c. 433), now provides that "any railroad corporation or any corporation owning or operating any railroad or railroad route within this state may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract,"—the words, "or any part thereof," having been added by the amendment of 1892.

The language, "any railroad corporation," comprehends all, and hence the act of 1839 applied, and section 78, Railroad Law 1890, as amended, applies, to street surface railroad companies. People v. O'Brien, 111 N. Y. 64, 18 N. E. 692.

Railroad corporations have only such powers as are expressly or impliedly given by law, and the act of 1839 conferred the right to exercise an additional power, one not theretofore possessed, since it gave capacity to contract for the use of the road, and hence the right to enter into a lease or a traffic agreement involving such use.

Chapter 252, § 15, Laws 1884, authorized any street surface railroad corporation to lease or transfer, to any other such company, the right to run upon or use any portion of its tracks, prohibiting, however, any such lease by one company to another owning or operating a parallel road thereto, in cities of over 300,000 population; and the act of 1884 did not repeal chapter 218, Laws 1839. People v. O'Brien, 111 N. Y. 65, 18 N. E. 692. The power so to contract,

under the act of 1839, pertained to the franchise, since it related to the use of the road,—the tracks,—and it bears, indeed, as close relation to the franchise as the right to sell, to mortgage, or to lease, all of which are elements of property.

The re-enactment of the provisions of the act of 1839 in section 78 of the Railroad Law of 1890, "the provisions ⁂ ⁂ ⁂ being substantially the same," must "be construed as a continuation of such law, and not as a new enactment," notwithstanding the repeal thereof by section 180, Railroad Law 1890, for such is the legislative declaration. "Railroad Law," Laws 1890, c. 565, § 182; "General Corporation Law," Laws 1892, c. 687, § 36; "Statutory Construction Law," Laws 1892, c. 677, § 32, as amended by Laws 1894, c. 448.

But the repeal thereof, even if such re-enactment in section 78 did not operate as a continuation of the prior statute, cannot avail the plaintiffs, since the right to so contract, conferred by the act of 1839, was an accrued and an acquired right of the defendants, and it has been expressly enacted that such repeal "shall not affect or impair ⁂ ⁂ ⁂ any ⁂ ⁂ ⁂ right ⁂ ⁂ ⁂ accrued or acquired, ⁂ ⁂ ⁂ but the same may be asserted, enforced ⁂ ⁂ ⁂ as fully and to the same extent as if such law had not been repealed." "Railroad Law," Laws 1890, c. 565, § 181; "General Corporation Law," Laws 1892, c. 687, § 31; "Statutory Construction Law," Laws 1892, c. 677, § 31. Such right to contract for the use of their respective roads was, therefore, preserved in these defendants. People v. Gilroy, 67 Hun, 323, 22 N. Y. Supp. 271.

The contention of plaintiffs' counsel, that section 78, Railroad Law, applied to railroad corporations other than street surface companies, is, I think, without force. That section is a part of article 3, which relates to the "consolidation, lease, sale and reorganization" of railroad corporations, and, after a careful reading of all sections embraced in that article, I have been unable to find any language indicative of an intention that the provisions thereof were not to apply to and govern all, including street surface companies.

Concededly, then, the right, the power, and the authority of the defendants to contract for the use of their respective roads, or of any part thereof, still exists, unless such right, power, and authority have been destroyed or diminished by the constitutional amendment of 1874, or by the constitution of 1894.

The amendment of 1874 provided that "no law shall authorize the construction or operation of a street railroad, except on condition" that the required consents be first obtained, and that provision was incorporated in the constitution of 1894 (article 3, § 18) in the same language. The constitutional and statutory conditions in force since January 1, 1875, undoubtedly apply to the operation as well as to the construction of a street railroad, for the language is disjunctive, but no property rights were disturbed or impaired by that amendment of 1874, nor by the constitution of 1894. The law (Laws 1839, c. 218) had, however, previously authorized contracts by railroad corporations for the use of their respective roads, which of necessity carried with it the right to operate cars over a road then in operation, and there is no constitutional or statutory inhibition

against such use as is contemplated by the act of 1839 and section 78, Railroad Law. The constitutional amendment of 1874 and the constitution of 1894 were future limitations upon the legislative power; they operated prospectively, and were not retroactive in effect. In re Gilbert E. R. Co., 70 N. Y. 361; People v. Brooklyn, F. & C. I. R. Co., 89 N. Y. 85; 6 Am. & Eng. Enc. Law (2d Ed.) p. 917. They destroyed no then-existing right of these defendants, nor did they diminish the power conferred by the act of 1839 to contract for the use of their respective roads; for, as was held in People v. Brooklyn, F. & C. I. R. Co., supra, "the prohibition invoked is one against future legislation, and has no reference to previously existing laws." The decision in Colonial City Traction Co. v. Kingston City R. Co., 153 N. Y. 540, 47 N. E. 810, is not, in my opinion, decisive of these motions. The main question presented here—the right of railroad corporations to contract for the use of their respective roads or of some part thereof, and thereafter to use the same, to operate cars thereon—was not before the court in that case. There plaintiff sought to acquire, in invitum, by condemnation proceedings, the right to use a portion of the defendant's road, and thereby connect the two sections of its road. The plaintiff had not obtained the consents of the local authorities and of the abutting property owners to the operation of its road on that portion of the street on which was the road it sought to acquire the use of, and hence did not have "sufficient vitality and strength to go on with and to construct a railroad." In re Rochester Electric Ry. Co., 123 N. Y. 358, 25 N. E. 381. It is now well settled that in condemnation proceedings the plaintiff must, as a condition precedent, establish a clear legal right to exercise the rights, powers, and privileges sought to be acquired thereby; and the learned judge writing the opinion in the Kingston Case, on the motion for a reargument (154 N. Y. 495, 48 N. E. 900), said: "The prohibition of the railroad law is absolute, so far as the plaintiff, proceeding in invitum, is concerned, and does not depend upon what the defendant might have the power to voluntarily agree to." And it was also said in that case (page 495, 154 N. Y., and page 901, 48 N. E.): "It was not our intention to decide any case but the one before us, which simply involved the standing of the plaintiff to make the application in question, and our opinion should be read in the light of that purpose. * * * A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance." Consequently the main question here was not passed upon in that case, nor was section 78, Railroad Law (Laws 1890, c. 565), considered.

For the reasons above stated, my conclusion is that the right of the defendants so to contract for the use of their respective roads, and to operate cars thereon, was a vested right, not dependent for vitality or authority upon any law enacted since the constitutional amendment of 1874, and the exercise of that right is not violative of any constitutional provision. People v. Brooklyn, F. & C. I. R. Co., supra; Ingersoll v. Railroad Co., 89 Hun, 213, 34 N. Y. Supp. 1044; Kunz v. Railroad Co., MSS. opinion of Mr. Justice W. M. Smith. The motions are therefore denied. Motions denied.