(Supreme Court, Special Term, Onondaga County. December, 1900.)

STREET RAILROADS—HIGHWAY CROSSINGS—CONSENT OF AUTHORITIES.

Const. art. 3, § 18, and Laws 1890, c. 565, §§ 90, 91, prohibit the construction or operation of a street railroad on a street or highway without the consent of the local authorities. Laws 1890, c. 565, § 11, authorizes the supreme court to allow a railroad company to occupy or cross a street or highway. Held, that a company incorporated as a street surface railroad company, and constructing a road on its own right of way through a town, could not cross highways without the consent of the local authorities, since section 11, c. 565, Laws 1890, applies only to steam railroads.

Petition of the Syracuse & South Bay Railway Company to be allowed to construct its road over certain highways. Application denied.

Tracey, Chapman & Tracey and Robert E. Drake, for petitioners.

William L. Barnum and Louis L. Waters, for commissioner.

ANDREWS, J. This application is made under section 11 of the general railroad law of the state (Laws 1890, c. 565), which provides that no railroad corporation shall construct its road "across, upon or along any highway in any town or street in any incorporated village, without the order of the supreme court of the district in which such highway or street is situated, made at a special term thereof, after at least ten days written notice of the intention to make application for such order shall have been given to the commissioners of highways of such town, or board of trustees of the village in which such highway or street is situated." The petitioner is a street surface railway corporation incorporated to construct and operate a street surface railway from the north line of the city of Syracuse to South Bay, on Oneida Lake. It has a traffic contract with the Syracuse Rapid-Transit Railway Company, whereby, on the construction of its road, it can transport its cars and passengers from the termination of its line on the city boundary to the depot of the New York Central & Hudson River Railroad Company over the tracks of such company. The petitioner has also filed a map and survey of its route, which shows a line extending northerly over the Brewerton plank road through the towns of Salina and Clay to the south line of the town of Cicero, and then by a private right of way through said last-mentioned town to South Bay, on Oneida Lake. It has obtained the public and private consents requisite to enable it to construct its road on such highway in the towns of Clay and Salina. In the town ·of Cicero it has obtained options for its private right of way, but to reach South Bay, as contemplated, it is necessary for it to cross

68 N.Y.S.—56

five highways at an angle of about 45°. It has failed to obtain the consent of the local authorities to cross such highways, and it is intimated that such consent is withheld from improper motives. However this may be, it is now claimed that where a crossing, merely, is in question, such consent is unnecessary, and that whether such an interference with the highway shall or shall not be permitted is entirely a matter for the court. As has been said, the petitioner is a street surface railway corporation, and the commissioner, in answer to its petition, calls attention both to section 18 of article 3 of the state constitution and section 91 of the railroad law. The constitution provides that:

"No law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having control of that portion of the street or highway upon which it is proposed to construct or operate such railroad, be first obtained."

There seems to be no dispute but that the court may permit a steam railroad to cross a highway in a town with or without the consent of the local authorities. Originally, it did not possess this power, but it was conferred upon it in order to control local hostility to great public interests. The issue, therefore, is whether a corporation organized to construct and operate a street surface railroad, but passing through a town upon its own right of way, may obtain a like permission, or whether it is restrained by the constitutional provision. The answer to this question, in turn, depends upon the interpretation given to the word "upon," used in the constitution. Is a road across a highway built upon it? If so, whether the permission of the court in such a case is required or not, its order cannot be a substitute for the consent of the local authorities. "The makers of the constitution are supposed to have understood the force and meaning of the words used by them, and to have used common, unscientific words in their ordinary meaning, and in the construction of sentences to have intended to employ the ordinary rules of grammar. Each section is supposed to be the result of careful deliberation, not only as to substance, but as to form." Colonial City Traction Co. v. Kingston City R. Co., 15 App. Div. 199, 44 N. Y. Supp. 734. To say that a railroad crossing a highway either at right angles, or, as in this case, at an angle of 45°, or, as might happen, much less directly, is not built "upon" or "on" the highway, would seem to require a forced construction of these words. It would be to give them anything but their plain, ordinary meaning. And, when it is considered that the amendment was adopted to preserve to the local authorities the control over the local highways, the court should be slow by interpretation to create exceptions and to diminish its full force and effect. There is little or no authority bearing upon this question. The only opinions in point seem to be those delivered in Osborne v. Railroad Co., 27 Hun, 589. Here Judge Cullen held that a railroad across a highway was built "upon and along" it, while Judge Dykman held the contrary. In Colonial City Traction Co. v. Kingston City R. Co., 153 N. Y. 540, 47 N. E. 810, however, is found an example of the strictness with which the provision of the consti-

tution respecting street railroads is construed. In the railroad law itself are several sections which throw light on the meaning of the legislature in the use of the word "upon," and, if not relevant as to the interpretation to be placed on the constitution, at least are relevant with regard to an identical prohibition contained in section 91. Section 20 provides that a corporation or individual engaged in lawful business may, except in a city, lay down and maintain such railroad tracks on or across any street or highway, not exceeding three miles in length, as shall be necessary for the transaction of its business, after having obtained the consent of the local authorities "having control of that portion of the street or highway upon which it is proposed to construct or operate such railroad." From the language here used it would seem that for a mere crossing the consent of the local authorities was required, and that a crossing was the construction of a railroad "upon" a street. Section 102 provides that no street surface railroad corporation shall construct, extend, or operate its road or tracks "in that portion of any street, avenue, road or highway in which a street surface railroad is or shall be lawfully constructed, except for necessary crossings." Apparently, therefore, a crossing involves the construction of a road "in a street."

The argument of the petitioner is, substantially, that when the constitutional provision as to street railroads was adopted, in 1874, these roads were constructed for short distances, and entirely within the bounds of highways. To meet this condition the word "upon" was appropriately used. Since that time, however, the use of street surface railways has been vastly extended, and they practically serve the purpose of, and are built in the same manner as, steam railroads; the only distinction being as to the motive power used. Their lines have been lengthened, and they carry passengers and freight between towns situated a considerable distance apart. Further than this the practice has been, to a large extent, to avoid the occupation of highways, except where it is necessary to cross them, and to construct the road upon the private right of way in the same manner that a steam railroad is constructed. The policy, therefore, it is said, which dictated the constitutional provision, does not apply when a crossing, merely, is desired. Such a crossing is certainly no greater obstruction in the case of electric surface railroads than in the case of a steam railroad, and the authority given to the supreme court in the latter case should be held to apply in the former. All this may be so, but it is an argument to be directed rather to the people or the legislature than to the courts. The original distinction made between steam and surface street railroads seems to have rested largely upon the fact that the latter were local in their character, and their regulation could safely be left to the local authorities. Steam railroads involved larger interests, and the convenience of the public in larger districts was affected. It was thought wise, therefore, that the courts should exercise some control over merely local opposition. It may be true, as is stated, that this distinction no longer exists. Still the constitutional provision is too clear and explicit to be evaded. The petitioner chose, for its own purposes, to organize under, and take the benefits of, the surface railroad law.

It should not be heard to complain that it is deprived of certain powers it would have acquired had it complied with the more onerous conditions of the general railroad act.

It is also suggested that the petitioner is not a "street railroad," within the meaning of the constitution, because it is not constructed for its whole length upon a public highway, or at least that it is not a "street railroad" so far as the town of Cicero is concerned. I cannot assent to this suggestion. Its articles of incorporation state that it is a street surface railroad corporation, and that it intends to build a street surface railroad. What the framers of the constitution had in mind was such a road as distinguished from the well-known steam railways then in use. That it chooses to pass for a portion of its route over its own property makes it no less a street railway. Otherwise, if it is not a street railway in Cicero, neither is it in Clay, where it avowedly passes along the public highway. If not in the one case, then not in the other does it require either public or private consent. As a whole, it is a "street railway," or it is not. If not, the constitution may be easily evaded. Even were this not so, the petitioner would not be aided. Section 91 of the railroad law contains exactly the same prohibition. Section 90 makes all corporations organized to build a street surface railroad subject to the provisions of section 91. As has been stated, the petitioner's articles of incorporation state that it was organized for just such purpose. Clearly, therefore, section 91, at least, applies. It is possible that, even if it were admitted that the crossing might not be made without the consent of the local authorities, yet it might be said that section 11 imposed an additional requirement upon street railways,—that the consent of the court is also necessary,—and that therefore this application should be granted. I do not think, however, that section 11 has any application to this case. The general understanding of the bar has been opposed to such a view. It will be remembered that the section speaks not only of railroads crossing streets and highways in villages and towns, but built "upon or along" them. So far as I know, the usual practice in regard to street railroads in village streets has been to obtain simply the consent of the local authorities and the abutting property owners. Nor do I find in the Reports any application made to the court, under such circumstances. I have no doubt but that this understanding is correct. Article 4 of the railroad law seems to contain a complete and definite code in regard to the construction of street railroads in streets. It was intended to be final, and when its provisions are complied with the road may be built. "Before a street railroad can be built" the appellate division in the Fourth department has said, "three consents must be acquired: (1) Of the owners of lands abutting on the street in which the road is to be constructed; * * * (2) of the local authorities; * * * (3) of the board of railroad commissioners." True, the court is speaking of a railroad in fact to be constructed upon city streets; but the statement is a general one, not limited to roads in a particular locality. In re Buffalo Traction Co., 25 App. Div. 447, 49 N. Y. Supp. 1052. Section 105 supports this construction. It provides that when such a corporation shall be dissolved

and annulled, or its charter repealed, the consents of the property owners and the local authorities, and the order of the court confirming the report of the commissioners that such road should be built, shall not be revoked, terminated, or impaired. Would not the legislature have also mentioned an order of the court, if this was a prerequisite to the construction or operation of the road in village streets? The application of the petitioner is denied, with $10 costs.

Application denied, with $10 costs.