In the Matter of the Application of the ROCHESTER ELECTRIC RAILWAY COMPANY, Appellant, to Acquire Lands of JENNIE S. WILKINS et al., Respondents.

Under the provisions of the Street Surface Railway Act (§ 3, chap. 252, Laws of 1884), which authorizes companies organized under it to acquire a right of way through streets or highways, provided that "the consent of the local authorities having control of that portion of a street or high- way upon which it is proposed to construct and operate such railroad * * * be first obtained," where the railroad is proposed to be con- structed upon a highway in a town, the "local authorities," whose con- sent is required, are the officers whose duties and powers relate to the supervision, care. and maintenance of the highway, i. e., the highway commissioners of the town.

Although a turnpike corporation has acquired a right to the use and con- trol of a town highway for its purposes, there still remains in the high- way commissioners a general control over it as a highway, and they have a duty to perform towards the public in connection with its proper maintenance as such.

Where, therefore, a turnpike company which was maintaining a highway as a turnpike road had acquired from adjoining land owners the right to a strip of land on each side of the highway for a bridle-path, and had given consent to a company organized under said act to use a portion of said bridle-path for its railroad, held, that this was not the consent required by the act; that it had no effect save as it regarded the rights and interests of the turnpike company; that the highway had not ceased to be such because used as a turnpike, and the administrative duty of the highway commissioners of the town remained unimpaired, so far as its exercise was required for the preservation of the rights and interests of the public; and that their consent was requisite.

In proceedings by said railroad company to acquire title to lands outside of the bridle-path for the purposes of its road, held, that the consent of the highway commissioners to the construction of the road was an essen- tial prerequisite, as the right of the petitioner to exercise the franchise of constructing and operating its road upon the highway did not become a vested right until the consent was obtained; and this not having been obtained, that the petitioner could· not maintain the proceedings.

In re N. Y. C. & H. R. R. R. Co. (77 N. Y. 248), distinguished.

In 1887 the petitioner filed a map and profile indicating its proposed route upon the bridle-path portion of the highway. The present proceedings were instituted in 1889. The petition alleged the making and filing of a map and survey; it made no mention of the road as previously built, or of the previous proceedings. It appeared that no map except the

original one was ever filed, and no map was ever made and filed of the route in connection with which this proceeding was sought to be maintained. *Held*, that as said act requires the proceeding to be in accordance with the requirements of the General Railroad Act (Chap. 140, Laws of 1850), and as that act requires the petitioner to allege that it has made a map or survey designating its line or route, and has located its road in accordance therewith (§ 22), proof of compliance with this provision was an essential prerequisite, and to meet this requirement the map, filed upon the previous proceeding, was not sufficient; that to give validity and force to said proceeding it was essential that all the steps pointed out by the general statute should be strictly followed.

(Argued October 6, 1890; decided October 28, 1890.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of June, 1890, which reversed an order of the Special Term appointing commissioners to appraise the value of lands sought to be taken for railroad purposes.

The petitioner was organized under chapter 252, Laws of 1884. In November, 1887, it acquired, for a consideration, the consent of the Rochester and Charlotte Turnpike Company for the construction and operation of a street surface railway on the highway leading from Rochester to Charlotte. This turnpike company had been organized for the purpose of maintaining this highway as a turnpike, with a charter for thirty years. It had also acquired from adjoining land owners the right to a strip of land on each side of the highway for a bridle-path. The consent given to this petitioner covered the use of a portion of the existing bridle-path. In August, 1887, the petitioner filed a map and profile, indicating by a line its proposed route upon the bridle-path portion of the highway.

In May, 1888, it instituted and carried through proceedings for the condemnation of certain lands required for the construction and operation of its road, against numerous property owners, and eventually built and put in operation an electric railroad.

The present proceeding was brought in November, 1889,

and by it petitioner seeks to acquire the title to the lands of the respondents for the purpose of a railway from Rochester to Charlotte and Lake Ontario. The petition alleges incorporation, a survey of a route, an inability to purchase the right of way, and describes, by meets and bounds, the strip of land acquired on its railroad, and which is upon the eastern edge of the bridle-path. It also alleges the making and filing of a map and survey, and services of notice upon land owners. It makes no mention of the railroad it had previously built, nor of the previous proceedings, nor connects this with the previous enterprise. No map was filed, as alleged, and no other map was ever filed except the first one, to which no reference is made in the petition. These proceedings were opposed by the land owners, who by appropriate denials, put in issue the allegations of the petition. The application was granted by the court at Special Term upon a referee's report.

*David Hays* for appellant. The consents of the proper authorities were obtained. (Laws of 1884, chap. 252, § 3; Laws of 1890, chap. 565, §§ 91, 160; *Estes* v. *Kelsey*, 8 Wend. 555; *Benedict* v. *Goit*, 3 Barb. 459; Laws of 1873, chap. 440; 3 Kent's Comm. 432; *R. S. Bank* v. *Averell*, 96 N. Y. 467; *Eno* v. *Crooke*, 10 id. 60.) The respondents having, in the former proceeding, consented to the appointment of commissioners, and having accepted the award of damages for the single track, are now estopped from insisting that the petitioner had no right to construct its road by reason of any original omission to comply with the requisites of the statute. (Lewis on Em. Domain, § 606; *B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; Laws of 1850, chap. 140, § 15; *Dykeman* v. *Mayor, etc.*, 5 N. Y. 434, 440.) Street surface railroads are not required to file maps; if a map was necessary, the one filed by the petitioner was sufficient. (*In re S. B. R. R. Co.*, 53 Hun, 131; 119 N. Y. 141; *In re C. I. R. R. Co.*, 12 Hun. 451; Laws of 1884, chap. 352, § 1; Laws of 1850, chap. 140, § 22.)

*Quincy Van Voorhis* for respondents. The law does not empower street surface railroads to acquire private property without the owner's consent. (*Rozell* v. *Andrews*, 103 N. Y. 150; *Hooker* v. *U.*, etc., *T. Co.*, 12 Wend. 371; *In re S. E. R. Co.*, 53 Hun, 131; 119 N. Y. 141; *People ex rel.* v. *Banks*, 67 id. 568; *In re U. F. Co.*, 98 id. 139.) As no map or survey of the proposed route has been filed or made, the company has omitted the first and most essential step to a proceeding of this kind. Section 22 of the General Railroad Law as amended by chapter 560 of the Laws of 1871, requires the filing of a map. (Laws of 1850, § 22; *In re N. Y. & B. R. R. Co.*, 62 Barb. 35; *In re N. Y., L. & W. R. R. Co.*, 32 Hun, 148; *W. V. R. R. Co.* v. *Norton*, 12 Abb. [N. S.] 317; Fiero on Spec. Pro. 695.) The fact that the consent of the local authorities of the town of Greece has not been obtained, is a fatal defect in the company's procedure. (*Walker* v. *Gaywood*, 31 N. Y. 51; *Benedict* v. *Goit*, 3 Barb. 459; *F. E. P. R. Co.* v. *Payne*, 17 id. 567; Laws of 1884, chap. 252, § 3.) After the company had filed a map and survey, covering a strip twelve feet wide on the west edge of the bridle-path and had notified the land owners to that effect, and began proceedings in court to condemn the strip of land secured by such proceedings, it had exhausted all the rights it possessed under the statute. (*People ex rel* v. *Newton*, 48 Hun, 477; Laws of 1850, chap. 140, § 129; Laws of 1881, chap. 649.) The requisite consent of land owners has not been obtained. (Laws of 1884, chap. 252, § 3; *In re D. R. Church*, 16 Barb. 237; *P. Bank* v. *S. A. Church*, 109 N. Y. 512; Laws of 1850, chap. 140, § 117; Laws of 1880, chap. 133, § 2; Laws of 1857, chap. 444, § 2; Laws of 1880, chap. 583; 1 R. S. 600; 1 Wood's Railway Law, 561, § 194; *Halstead* v. *Meyer*, 3 N. Y. 430; 15 Johns. 358; Colby's Railroad Laws, 137, 138.) All the consents required by the statute for the entire road must be obtained before the petition is filed. Property cannot be condemned until that has been done. (*In re M. T. Co.*, 111 N. Y. 588, 601, 602; 3 Washb. on Real Prop. 236; *B. C. Inst.* v. *Ritter*, 87 N. Y. 250; *P. Bank* v. *S. A.*, etc.,

*Church*, 109 id. 512; 1 Rumsey's Pr. 195; *Regina* v. *Bloxham*, 1 Q. B. 520.)

GRAY, J.    The land owners have opposed these proceedings of the petitioner to acquire their lands, upon various grounds; but it is only necessary to discuss two propositions, which, *in limine*, seem successfully to assail the right of the corporation to take by condemnation the respondents' property for its corporate uses.    The respondents say that the petitioner has not obtained the consent of the local authorities of the town of Greece, and that it has not made and filed a map or survey of the proposed route. · To the first of these objections the petitioner answers that the portion of the highway in question lies neither in a city, nor in a village, and that the statute has failed to specify who are the proper " local authorities," when the highway is in a town, and has left that question open.    It relies upon the consent obtained from the turnpike company, as all sufficient and as emanating from an authority in actual control of the highway.    In this contention the petitioner, I think, is clearly wrong.    Chapter 252 of the Laws of 1884, under which this corporation was organized, was passed to provide for the construction, extension, maintenance and operation of street surface railroads in cities, towns and villages.    By its third section, it was enacted that any company organized under it, as well as any theretofore organized, " may construct, maintain, operate, use and extend a railroad, or branches, on the surface of the soil, through, upon and along any of the streets    *   *   *    or highways of such cities, towns and villages and also through    *   *   *    any private property, which said company may acquire for the purpose    *   *   *    provided that the consent in writing of the owners of one-half in value of the property bounded on and the consent also of the local authorities having control of that portion of a street or highway upon which it is proposed to construct or operate such railroad    *   *   *    be first obtained."    Then follows a provision that in cities the common council and in villages the board of trustees shall be the local authorities to give consents.

The argument of the appellant is that the statute being silent as to who shall be the local authority for the purpose of consenting in towns, such consent may proceed from the authority in actual control; that the turnpike company is such an authority and exclusively operates and controls the highway, and only its consent was necessary. There are two objections to this argument. In the first place, it disregards the true or legal significance of the term "local authorities," as used in the act, and, in the next place, it assumes that the highway commissioners' authority has been wholly divested by the organization and operation of the turnpike company. The "local authorities," to whom the statute refers as the source of the consent to be given, are the officers of the city, town, or village, whose duties and powers relate to the supervision, care and maintenance of the streets or highways, and it would be a misuse of language to attach any other sense to those words. It is very evident, by reference to the connection in which the legislature frequently uses the term "local authorities," that what is meant is, those officers on whom the administration of the government of the particular political subdivision of the state, by virtue of their office, devolves, in relation to the subject-matter of the legislative provision. I think we need not delay to enforce this seemingly self-evident proposition by abundant illustration from the laws. A turnpike corporation is not a local authority, and its consent is only good for what it may be worth relatively to its own rights and interests in the matter. The highway has not ceased to be such because of becoming a turnpike, and all authority of the highway commissioners has not been taken away by that change. (*Walker* v. *Caywood*, 31 N. Y. 51.) Whatever the interests and however exclusive the rights and comprehensive the duties of the turnpike corporation over the highway, the administrative power of the highway commissioners of the town remains unimpaired, in so far as its exercise may be demanded for the preservation and protection of the interests of the public. These companies are private corporations, whose organization is, primarily and principally, for private gain, and shall they be deemed con-

servators of the public interests? That would be an absurd proposition. Supervision and control over the public highways are vested in the local authorities to prevent illegal encroachments upon the public highway by the turnpike company, or from any other direction. (*Walker* v. *Caywood, supra.*) The highways are held in trust by the state for the public, and they are controlled through the instrumentalities of local authorities. (1 R. S. part 1, chap. 16, tit. 1, art. 1, § 1.)

Though a turnpike corporation acquires a right to the use and control of the highway for its purposes, some duty of supervision and some control still remain in the local authorities. The adjoining land owners and the public generally are interested in having the highways maintained suitable for the public use and in preventing their diversions to other uses, or their subjection to other burdens, until there shall exist some controlling reason and a due authorization for the new use. It cannot properly be said that this turnpike company, this private corporation, has so far succeeded to the powers and rights of the town officers as to be able to determine such questions, and to release the interests of the public. The highway commissioners are vested with the general control over the public highways, and they have a duty to perform toward the public, in connection with their proper maintenance as such.

The next phase of the question, which presents itself then, is, if the consent of the highway commissioners, as the local authorities having control over the highway in question, has not been obtained, is that consent an essential prerequisite to the right to maintain this proceeding? That would seem to be the inevitable conclusion, based upon the language of the statute, in its plain reading, and it is, I think, fortified by reasoning and by authority. The authority conferred by the act of 1884 is to construct and operate the railroad through the street or highway, and to acquire private property for that purpose, *provided that the consents of the property owners and the local authorities be first obtained.* The language imports a condition to the right of the company to proceed, after its organization, in the work of construction. The consents which

are to be first obtained are to the construction and operation of any railroad at all, as proposed. Its condition, after the work of formal organization is complete, is still an incomplete or imperfect one. The legislature, in the general law of 1884, followed the constitutional requirements as to the consents to be obtained from property owners and from the local authorities. The design of the people, as manifested in the Constitution and again in this act, was to guard the public generally against these invasions of streets and highways by railways under authority of legislative grants, and the protection was provided for by the imposition of the conditions, in every case of a projected street railroad, that the project should be approved by the local authorities and by a certain proportion of property owners; with the permission, if the requisite consents of the property owners were refused, to apply to the court, whose determination might stand as a substitute for such consents. Sufficient vitality and strength to go on with and to construct a railroad do not exist in the newly-formed corporation, until infused by the consents of the local authorities and property owners. Until that moment, when the company can assert that the statutory conditions of its right to be and to do are fulfilled, it cannot strictly, nor justly, be said that it is in a position legally to deprive the land owner of his property. By organization under the act it has become a corporation, but with no authority as yet to construct and operate a railroad upon a street or highway. Its right to the exercise of that franchise is still inchoate and does not become a vested right, until after the consents specified by the statute have been obtained. It may be a corporation, but it has no power to take a step in the direction of occupying the street or highway, because it is, in effect, inhibited by the condition of its charter from doing so, while the consents to the appropriation of the street or highway to railroad uses are lacking.

In *In re 34th St. R. R. Co.* (102 N. Y. 343), objections were made by the property owners to the granting of the company's application for the appointment of commissioners to determine whether the proposed road ought to be constructed,

and one of them was that, as the route was in part coincident with the routes of existing street railroads, their consent had been refused. As the act provided that the consent of other companies should be obtained in such cases, the point was made that it would be futile to proceed in the matter while the consents were lacking. Though that consent was needed by the company before it could occupy the street, Judge Andrews' opinion in the case proceeded upon the theory that it was an independent condition, and it was not an element of the authority of the court to proceed upon the particular matter before it. That proceeding was instituted to meet that condition of the act, which required that, if the consent of property owners was refused, the determination of the court, in lieu thereof, should be had. The only prerequisite to such an application, as Judge Andrews held, was " an inability to obtain the consent of property owners." As it was not a proceeding to take private property by condemnation, but was a step in the direction of obtaining one of the consents needed, as preliminary to the work of construction and operation, his language that the act did not prescribe the order in which the several consents shall be obtained, obviously, has reference to the consents which were precedent conditions to operation of the company's franchises. In his opinion, he holds that there were three precedent conditions, to which the right of the company to construct and to operate was subject, namely, " the consent of the local authorities, the consents of property owners, or, in lieu thereof, the determination of commissioners in its favor, and the consent of the companies having coincident routes." The opinion bore upon the question of whether the proceeding for the appointment of commissioners to determine as to the petitioner's project, as a substitute for the required consent of property owners, ought to be maintained, and it may be distinctly read as an authority in support of the proposition that precedent conditions are affixed by the act to every charter, and their fulfillment must be shown before construction and operation can be initiated, or steps thereto taken by the corporation.

The opinion of this court in *In re N. Y. C. & H. R. R. R. Co.* (77 N. Y. 248), contains nothing adverse to these views. That was a proceeding under the General Railroad Act to acquire a tract of land along the river front, which was intersected by streets, and the point was made that the order appointing the commissioners, etc., did not give the petitioner control of the streets of the city, and the petitioner might not be able to carry out its plans, and, hence, the condemnation of private interests in land should not be permitted. MILLER J., there said: "There is no rule which requires that, under the circumstances presented where different rights are essential in order to acquire an interest in and for railroad purposes, that the acquisition of one interest should precede the other, or that proceedings should be had to acquire each of them at the same time." The learned judge held that the consent of the city was not necessarily preliminary to the acquisition of the land of the appellants, and might be lawfully obtained after the right to the land has been acquired. The provision of the General Railroad Act referred to was not in the shape of some condition inhibiting, or suspending the operation of the chartered franchises of the company to construct and operate its railroad. It was merely a limitation upon the construction to be placed upon the statute. The provision was that nothing contained in the act should be construed as authorizing the construction of any railroad in the streets of a city without its assent. The effect of that limitation was not to prevent any construction and operation of the railroad, but where the railroad company, in the operation of its franchises, sought to make any use of streets in a city, the general authority of the statute should not be deemed to extend to that use without the assent of the municipality. So the opinion in the case cited has no relevancy to the case at bar. We are furnished with a judicial construction of the force of language precisely similar to that which gives rise to our present discussion. In *In re Kings Co. Elev. R. R. Co.* (105 N. Y. 97), it was sought to appropriate an interest in lands to the use of the railway and the proceeding was there, as here, to

obtain the appointment of commissioners of appraisal. The petitioner, there, was organized under chapter 606 of the Laws of 1875 (commonly known as the Rapid Transit Act), and the point, *inter alia*, was taken, in opposition to the right of the petitioner to maintain the proceeding, that it never obtained the consent of the local authorities having control of that portion of the street upon which it was proposed to construct the railway. The Rapid Transit Act provided that "the consent of the owners of one-half the property, etc., * * * and the consent also of the local authorities having the control of that portion of the street or highway upon which it is proposed to construct or operate such railway, be first obtained." Judge DANFORTH, who delivered the opinion in that case, in the course of it, construed that provision to mean that, "until the consent of each was obtained, nothing could be done by way of construction." That eminent jurist held that "the power contingently conferred by the legislature to construct the railway became absolute; for the conditions imposed upon its exercise had both been performed. The abutting owners had consented and so had the municipal authorities." It would be, manifestly, unjust to hold otherwise, as to the necessity of first showing compliance with these constitutionally imposed conditions before a proceeding can be maintained which has for its end the taking of private property against the consent of its owner. His interests should not be permitted to be affected by the burden and cloud of such proceedings, when it does not appear that the right to construct its railroad is yet vested in the corporation.

The further ground taken by the property owners, in their efforts to oppose the appropriation of their property, is that a map should have been filed by the petitioner. Authority to acquire private property for its railroad purposes is conferred upon petitioner by the act of 1884, and the mode of its exercise is through the proceedings described in the General Railroad Act of 1850. The corporation, which is formed under the act of 1884, is given the powers and privileges granted by that general act, and reference to its provisions shows in what

manner and by what special proceedings real estate may be acquired, when there is an inability to acquire it by agreement. The act of 1850 details what the petition, which initiates the proceedings, must contain by way of allegations for the purpose, and what, therefore, must be proved to the court. Among other things, the petition must allege that the company has made a map or survey, by which its line, or route, is designated, and that they have located their road according to such survey and filed certificates of such location in the clerk's office of the county. This allegation was denied, and it was not proved, and it is not pretended that any map was made and filed of the route, in connection with which this proceeding is sought to be maintained. The appellant argues that a map is not required in the case of street railroads, or, if it is, that the one filed upon the previous proceeding of the petitioner was sufficient. The point is untenable. For the validity and force of such a proceeding it is essential that all the steps pointed out by the general statute should be strictly followed. It may be that in this particular case no prejudice would be worked by the failure to make and file a map, but the question is not of the particular necessity, but is one which goes to the foundation of the right of the petitioner to maintain the proceeding. Where it is sought, by resort to the special proceeding authorized by the statute, to take lands, *in invitum* the owner, they must be followed strictly, or they are unavailing. It is only when the steps are all taken, which the sovereign power has prescribed, that title to the private property is transferred from its owner. The rule is too familiar to require discussion at this day that a statute authority, in derogation of the common law, to divest the title of one must be strictly pursued and all prescribed requirements strictly observed and conformed to, or it will be ineffectual for the purpose. (4 Hill, 76–86 ; 10 N. Y. 329 ; 78 id. 362, 366 ; 96 id. 351, 357.) The fact that the proceeding is for the purpose of acquiring private property is argument enough, if any argument were needed in behalf of a statutory prescription. The land owner is entitled to the notice provided for and to the opportunity of knowing exactly by the

map and survey which has been made and filed, where and how the line, or route of railroad is projected. Such knowledge is evidently of so practical and available a character, that it is provided for, in order to enable the property owner the more readily to determine the question of acquiescence, or of opposition. But discussion is needless on this head. The act of 1884 refers the company to the provisions of the general act of 1850, for purposes of acquiring private lands, and no reason in law exists why those provisions should not be as binding and the protection to the private citizen be as sacredly maintained in the case of a street railroad, as in that of a steam railroad. The rule is a salutary one, and should be respected for that reason, as well as for its absoluteness under the statute.

For the reasons expressed in the foregoing opinion, the order appealed from should be affirmed, with costs.

All concur, EARL, J., in result on last ground stated in the opinion, RUGER, Ch. J., not voting.

Order affirmed.