UNDERGROUND R. R. OF CITY OF NEW YORK et al. v. CITY OF NEW YORK et al.

(Circuit Court, S. D. New York. June 19, 1902.)

Nos. 89, 90.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—REQUIREMENTS OF PLEADING.

To confer jurisdiction of a suit between citizens of the same state upon a federal court on the ground that legislation of a state which it is sought to have declared invalid impairs the obligation of a contract or deprives complainant of his property without due process of law, and that, therefore, the questions involved arise under the constitution of the United States, it must appear from complainant's pleading that there is a legal contract subject to impairment, or that complainant has become vested with property rights in the particular thing of which he is alleged to have been deprived.

2. SAME—PROTECTION OF CONSTITUTIONAL RIGHTS.

A street railroad company which has acquired a franchise to construct its line has a property right therein of which it cannot be deprived without due process of law, and also contract rights which cannot be impaired by the state by subsequent legislation; but, before it can invoke the provisions of the constitution of the United States for the protection of such rights by a suit in a federal court, it must show that it has done all the things required under the laws of the state to vest it with the contract and property rights which it seeks to protect.

3. SAME—VESTED RIGHTS OF STREET RAILROAD COMPANY—NEW YORK LAWS.

Under the constitution and statutes of New York, the consent of the municipal authorities is a condition precedent to the right to construct a street railroad, and a company incorporated under the general statute for the purpose of constructing and operating a railroad in the streets of the city of New York, upon the surface or underground, which never obtained the consent of the city authorities, acquired no property rights merely by the filing of a map and profile of its proposed line, nor did it become vested with any contract rights with the state subject to impairment by subsequent legislation, and it cannot upon a bill showing such facts maintain a suit in a federal court to enjoin the city from constructing a railroad along or under the streets selected for its line, under the provisions of the rapid transit act (Laws N. Y. 1891, c. 4, as amended), on the ground that such act impairs the obligation of a contract or deprives it of property without due process of law.

4. STREET RAILROADS—RIGHTS IN STREETS—CONSENT OF MUNICIPALITY.

The action of the authorities of the city of New York in giving consent to the construction of an underground railroad in the streets of the city, under the rapid transit act of 1891, cannot inure to the benefit of a corporation organized prior to the passage of such act for the purpose of constructing such a road so as to vest it with a precedent right.

5. SAME—FORFEITURE OF CHARTER—NONUSER.

Under the law of New York, a corporation organized under the general incorporation act of 1850 as amended in 1867, for the purpose of constructing and operating a street railroad, forfeited its charter where it failed to obtain the consent of the municipal authorities or the property owners to the construction of its line within five years, as required by the act.

¶ 1. Jurisdiction of federal courts in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

See Courts, vol. 13, Cent. Dig. §§ 956, 957.

**6. FEDERAL COURTS—FOLLOWING STATE DECISION—VALIDITY OF STATUTES.**

The New York rapid transit act of 1891 having been declared valid under the state constitution by the highest court of the state, such decision is conclusive upon a federal court.

**7. CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS—VALIDITY OF NEW YORK RAPID TRANSIT ACT.**

The New York rapid transit act of 1891, which authorizes the rapid transit board provided for therein to contract for the construction of an underground street railroad in the city of New York "with any person, firm, or corporation which in the opinion of the board shall be best qualified to fulfill and carry out such contract," is not subject to the objection of unconstitutionality as depriving other companies desiring to construct a road on the same line of the equal protection of the laws.

In Equity. On demurrers to bill.

James M. Fisk (Roger Poster, of counsel), for complainants.

Strong & Cadwalader, for Rapid Transit Subway Construction Co.

George W. Wickersham, for defendants.

Nicoll, Anable & Lindsay, for John B. McDonald.

Boardman, Platt & Soley and Parsons, Shepard & Ogden (Edward M. Shepard, of counsel), for defendants Alexander E. Orr and others.

HAZEL, District Judge. By this suit the complainants, domestic corporations organized under the laws of the state of New York, seek relief from alleged unauthorized acts of the defendants, the city of New York, certain municipal officers, rapid transit commissioners, and contractors engaged in the construction of an underground railway and subway in the city of New York. For the purpose of convenience and brevity, the defendants are hereafter designated as municipal authorities, commissioners, and contractors. The bill in form seeks to enjoin municipal officers and commissioners from issuing bonds of the city of New York to pay for the work done in the construction of the subway or underground railway now in course of completion, from paying any money to the contractors under color of authority of the rapid transit act, so called (chapter 4, Laws 1891), as subsequently amended, and to restrain the contractors from continuing the construction of the road upon the route specified on maps filed by complainants and their predecessors. The defendants demur separately to the bill of complaint on the ground—First, that the subject-matter in dispute does not arise under the constitution and laws of the United States, and therefore the court is without jurisdiction; second, that the court is also without jurisdiction because of the citizenship of the parties; third, want of equity appearing on the face of the bill; fourth, multifariousness and laches. The demurrants admit the following facts, to wit: The Central Tunnel Railway Company was organized on March 26, 1881, under the general railroad law of the state of New York (Laws 1850, c. 140; Laws 1880, c. 583), for the purpose of constructing and maintaining a railroad for the use of the public in the conveyance of persons in the city of New York. The articles of association specifically state the length of the railroad and

¶ 6. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

the streets to and under which it was intended to construct said road. On March 28, 1882, a map and profile of the route adopted was filed as required by law. This company failed to obtain the consent of the municipal authorities and of the necessary property owners, and therefore on February 2, 1883, an application was made in its behalf to the general term of the supreme court for the First department for the appointment of commissioners, pursuant to the tunnel law of 1880 (chapter 582), to determine whether and in what manner such railroad ought to be built. Commissioners were appointed. Two vacancies in the commission occurred by resignation and declination to act. Other commissioners were appointed, one of whom also declined. Another application was made to the court to fill such vacancy, which application, however, was never granted. It does not appear when the last application was made, but it may be assumed from the general allegations of the bill that it was very soon after the appointment of the commissioners following the first application. Neither the general term nor its successor, the appellate division of the supreme court, First department, has ever acted upon the latter application. No renewal of such application has been made to the appellate division, and nothing further was done by this corporation or its successors towards the appointment of commissioners. The New York & New Jersey Tunnel Railway Company and the Terminal Underground Railway Company were organized on January 2, 1883, and March 25, 1886, respectively, under the general railroad law of 1850, as amended by chapter 583 of the Laws of 1880. Subsequently, on August 21, 1896, these three railroad companies were merged and consolidated into the Underground Railroad of the City of New York, one of complainants, which was organized and incorporated on October 2, 1896. The latter corporation paid a percentage tax of $181 on its capital stock, as required by law upon filing its certificate of incorporation. A map and profile of its route were duly filed June 10, 1897, and it is claimed that it succeeded to all the rights and privileges of its predecessors. The complainant Rapid Transit Underground Railroad Company was incorporated on April 9, 1897, pursuant to chapter 39 of the General Laws, to construct an underground railway in the city of New York. On October 11, 1897, it filed a map and profile of the route over and under which it was intended to operate. On April 29, 1897, this corporation, which is a taxpayer, entered into an agreement with the underground railroad by which it obtained a leasehold right to the rights and franchises of the underground railroad. The bill avers broadly that by these proceedings the Rapid Transit Underground Railway acquired the exclusive franchises to build and operate a railroad and tunnel over the route described by the map and profiles theretofore filed. By an act of the legislature passed in 1891, amended by chapter 752, Laws 1894, and already mentioned as the rapid transit act, it is provided that a board of rapid transit railroad commissioners shall be created, who, among other things, are empowered to fill vacancies among their number, and to construct an underground railroad in the city of New York, provided the qualified electors of that city shall favor such construction. The act further empowers the commissioners to determine the route and general plan of construction,

and provides that their plans and conclusions shall be submitted to the common council for its consent and approval; that, in case consents of the property owners along the line of route upon which the approval of the municipal authorities had been given cannot be obtained, an application shall be made by the commissioners to the appellate division of the supreme court for authority to construct along the proposed route. Such an application was made and authority obtained. Subsequently, on February 24, 1900, the defendants the city of New York, municipal authorities, and commissioners entered into a contract with the defendants contractors to construct a road over the route described by the maps and profiles theretofore filed by the complainants and their predecessors. The bill, which is very lengthy, then proceeds to recite in detail the proceedings by which defendants claim to obtain the right to construct an underground railroad in the city of New York pursuant to the authority of the rapid transit act. It is averred that the rapid transit act is an infringement of the fourteenth amendment to the constitution of the United States, because it takes the property of the complainants for private use without due process of law, and is therefore unconstitutional. It is also averred in the bill that the determination of the commissioners appointed under the rapid transit act to construct an underground railroad upon the routes over which it is claimed complainants have the right to construct a road, together with the consent of the local authorities and the action of the appellate division of the supreme court, in lieu of the consent of property owners bounded upon such route, in effect gave consent to complainants to construct such road, and the legal effect of such acts must be construed as a confirmation of complainants' franchise rights, and inure wholly to their benefit.

Does the bill disclose from the foregoing statement of facts a cause of action which is cognizable by this tribunal? All parties are residents of the state of New York. To give the court jurisdiction there must, therefore, be involved a federal question besides the necessary jurisdictional amount. How does the federal question arise? Have the complainants, by virtue of the various acts of incorporation set forth in the bill, together with the steps which have been taken by their predecessors, as well as themselves, acquired any rights, as against the defendants, which bring them within the protection of the federal constitution or other national enactments? How could such privileges and immunities accrue to the complainants as would entitle them here to equitable relief? Clearly, the complainants must be vested with some contract rights which have been impaired by legislative action on the part of the state of New York, thus bringing them within the protection of article 1, § 10, of the federal constitution, or they must have been deprived by the state of New York of some property right without due process of law, or be denied equal protection of the laws, and therefore may invoke the fourteenth amendment of the constitution to their assistance. As was said in City of New Orleans v. New Orleans Waterworks Co., 142 U. S. 88, 12 Sup. Ct. 146, 35 L. Ed. 943:

"Before we can be asked to determine whether a statute has impaired the obligation of a contract, it should appear that there was a legal contract subject to impairment, and some ground to believe that it has been im-

paired, and that to constitute a violation of the provision against depriving any person of his property without due process of law it should appear that such person has a property in the particular thing of which he is alleged to have been deprived."

The complainants cannot by mere allegation that such questions are before the court for decision vest the court with jurisdiction over a controversy when it clearly appears that no federal question is involved. McCain v. City of Des Moines, 174 U. S. 168, 19 Sup. Ct. 644, 43 L. Ed. 936. Complainants claim that by statutory enactment they obtained an exclusive franchise to construct an underground railroad, and that fixed and positive contractual relations were established which have been impaired by subsequent legislative and corporate action; that there is danger that complainants will be deprived of vested property rights without due process of law. When a question arising under the constitution or laws of the United States is necessarily involved, the jurisdiction of the federal courts may be properly invoked to redress the wrong and afford such reparable aid as equity and good conscience require. The averments of the bill are framed to that end. No citation of authorities is needed declarative of the principle that a franchise right obtained from a sovereign power for the purpose of constructing a railroad or to acquire lands for use by a corporation for the purpose for which it is created is property or its equivalent, a grant of privileges or immunities. Such property rights when obtained may be exercised undisturbed, or may be converted into tangible benefits at the option of the owner. The object and purpose attained by the formation of an association often leads to liberal concessions by the sovereignty from motives of public policy. It is presumed that the general public will receive substantial benefits by the state's munificence. From the very nature of the contemplated project, the public is expected to receive the benefit either in health, convenience, or welfare, and the gratuitous generosity of the sovereign power is invoked to encourage the exploitation of vast commercial enterprises for the general good. It must follow that any legislative grant or procurement within the scope and power of the legislative authority when consummated becomes authoritatively a vested property right. The state, after the contract is completed, may do no act in restraint or impairment of the contract rights and immunities which it gave. To restrict, vary, or violate any such contractual rights and obligations which may have arisen is forbidden, as we have already seen, by article 1, § 10, subd. 1, of the constitution of the United States, which prohibits the enactment of any law by a state impairing the obligations of contracts. Adirondack R. Co. v. People of State of New York, 176 U. S. 335, 20 Sup. Ct. 460, 44 L. Ed. 492. The fourteenth amendment forbids a state to deprive any person of life, liberty, or property without due process of law. Are any property rights shown by the bill to have been improperly devested from complainant without respect to this constitutional provision? It must be ascertained at the outset whether the complainants obtained any vested property rights pursuant to a legal contract with the state. If contractual obligations became vested by the completed acts of the parties, their subsequent impairment by the respondent may be shown as a basis for claiming jurisdiction in the federal courts. Cooley, Const. Lim. p. 54.

It is contended for the demurrants that the allegations of the bill clearly show that the complainants had no contract with the state whatever which has been or could be impaired by the acts complained of. I have carefully examined the authorities upon which complainants rely to establish the existence of such contractual relations between it and the state, and as a result thereof I am of opinion that the demurrants' contention must prevail. It is based on sound logic, good sense, and substantive law. The incorporation of the Central Tunnel Railway Company, a predecessor of complainant, under General Laws of 1850, was authorized by the constitution of the state of New York, which vested the state legislature with power to pass general laws for the formation of corporations to construct street railroads. The provision of the constitution authorizes the legislature to enact general laws for the formation of corporations to lay down railroad tracks upon the condition, among others, that the consent of the local authorities be first obtained. In the case of People v. O'Brien, 111 N. Y. 30, 18 N. E. 693, 2 L. R. A. 255, 7 Am. St. Rep. 684, Chief Justice Ruger says:

"This right, under the constitution, could be acquired only from the city authorities, and they could grant or refuse it at their pleasure. The constitution not only made the consent of the municipal authorities indispensable to the creation of such a right, but, by implication, conferred authority upon them to grant the consent upon such terms and conditions as they chose to impose, and upon the corporation the right to acquire it by purchase."

The constitution of the state further provided that when the required consents of property owners cannot be obtained the general term of the supreme court might upon application appoint three commissioners, who shall determine after hearing of all parties interested whether such road ought to be constructed. This right under the constitution, therefore, could only be acquired by strictly complying with the provisions referred to. No greater right was imparted to the corporation by its articles of association, and subsequent filing of maps and profiles, than the permissive right to obtain consents of property owners and of the municipality affected. To effect a substantive contract between the state and a corporation organized for the purpose of constructing a railroad requires a meeting of minds of the interested and essential parties of the contract. The constitution and the statutes of the state in unequivocal language have indicated who must be regarded as interested in such contractual obligations. The mere act of filing maps and profiles creates no lien in favor of a street surface railway as against the owner of adjacent property, at least not until the legal authorities whose consent is essential have signified their complete acquiescence and assent to the construction of the railroad. Filing of maps is simply notice of intention as to the route and property which the road proposes to take. People v. Adirondack Ry. Co., 160 N. Y. 225, 54 N. E. 689. In the case at bar the attempt to obtain the consents of owners of property along the proposed route, as well as the assent of the municipal authorities, was ineffectual. This, I think, must be regarded as equivalent to a refusal by the authorities to bargain or to assent to the immunities and property rights which otherwise would have been acquired. The consent of the municipal au-

thorities and the approval by the appellate division of the determination of the commissioners to construct a road pursuant to the rapid transit act cannot inure to the benefit of complainants. It was decided by the general term of the supreme court, First department, in Re New York Dist. Ry. Co., 42 Hun, 621, that section 1, c. 582, Laws 1880, amendment to the Laws of 1850, which provided that the determination of commissioners confirmed by the court may be taken in lieu of the consent both of municipal authorities and property owners, is unconstitutional; that the consent of the municipality must be obtained in any event. This case was affirmed by the state court of appeals. 107 N. Y. 42, 14 N. E. 187. This decision leads to the conclusion that because of it, and for no other reason, the general term failed to act upon the application of complainants' predecessor that the vacancy upon the commission theretofore appointed be filled by the court. The complainants cannot, therefore, claim that any rights remain to them because of delay caused by inaction of judicial authority. Neither the complainants nor their predecessors had obtained either the consent of the municipal authorities or of property owners abutting upon the line of route. The consents required by the constitution and laws of the state are conditions precedent to a valid contract, and no right of franchise or immunities may be granted or obtained until such conditions are complied with. Filing of plans and profiles by any of the complainants or their predecessors resulted in the acquisition of no vested rights that could be impaired by the acts admitted by the demurrers. Complainants had merely taken preliminary steps in the effort to obtain such vested rights. In re Rochester Electric Ry. Co., 123 N. Y. 351, 25 N. E. 381; In re Thirty-Fourth St. R. Co., 102 N. Y. 343, 7 N. E. 172. The language of Justice Gray, in the opinion of the court rendered in the case first cited, may with propriety be applied. He says:

"Sufficient vitality and strength to go on with and to construct a railroad do not exist in the newly formed corporation, until infused by the consents of the local authorities and property owners. Until that moment when the company can assert that the statutory conditions of its right to be and to do are fulfilled, it cannot strictly nor justly be said that it is in a position legally to deprive the landowner of his property. By organization under the act it has become a corporation, but with no authority as yet to construct and operate a railroad upon a street or highway. Its right to the exercise of that franchise is still inchoate, and does not become a vested right, until after the consents specified by the statute have been obtained. It may be a corporation, but it has no power to take a step in the direction of occupying the street or highway, because it is, in effect, inhibited by the condition of its charter from doing so, while the consents to the appropriation of the street or highway to railroad uses are lacking."

In the latter case the right of the railroad company was subject to three precedent conditions—First, the consent of the local authorities; second, consent of property owners, or in lieu thereof the determination and approval of the commissioners in its favor; third, the consent of the companies having coincident routes. The court held that these conditions must be performed before any right to proceed with the construction of the road could be exercised. It is therefore clear that the municipal authorities have the determining power to grant the right to tear up the streets and to take the property of the city for the construction of a street railroad. The choice

of responsible parties is with the municipality. Obviously in no sense can the consents of municipal authorities obtained under the rapid transit act of 1891 and amendments of 1894 inure to complainants' benefit. The authorities cited by counsel for complainants do not apply. They refer for most part to railroads constructed without the limits of a municipality, and where the preliminary steps to secure vested rights differ from those required in a case like the present. He asserts with great zeal and earnestness that complainants and their predecessors in good faith filed maps and profiles, necessarily expended $100,000 towards the construction of the road, and applied to the general term for the appointment of commissioners, and, having begun construction of the road thereby upon the subsequent consent of the municipal authorities under the rapid transit act, acquired vested property rights; that in legal effect such action was a consummation of complainants' contract. I am unable to subscribe to that theory. It is a fallacious assertion, in the light of the statutes of the state and of the authorities construing them. The determination of the commissioners appointed under the rapid transit act, and the rights acquired by individuals thereunder, can in no manner be viewed as an act in completion of what complainants' predecessors undertook to accomplish 20 years prior to that determination and failed. The application to the general term for the appointment of commissioners on February 2, 1883, was without force. It was prematurely made. None of the conditions, as we have seen, upon which the right to apply was based had been performed. The consent of the local authorities, which was an essential element, could not be shown upon the application. People v. Newton, 58 N. Y. Super. Ct. 439, 11 N. Y. Supp. 782; In re Long Island R. Co., 45 N. Y. 364; Schaper v. Railway Co., 4 N. Y. St. Rep. 860; In re Rochester Electric Ry. Co., 123 N. Y. 351, 25 N. E. 381; Suburban Rapid Transit Co. v. City of New York, 128 N. Y. 510, 28 N. E. 525. Moreover, the rights of complainants' predecessors obtained by their charters lapsed and were abrogated by their failure to comply with the provisions of section 47 of the act of 1850, as amended by chapter 775 of the Laws of 1867. Such failure has uniformly been held to operate as a self-executory forfeiture of the charter of a corporation. In re Brooklyn, W. & N. Ry. Co., 72 N. Y. 245; Brooklyn Steam Transit Co. v. City of Brooklyn, 78 N. Y. 524. These cases seem to be authoritative of the abandonment of the project by the companies which had obtained the permissive right to construct an underground railroad. No contract with the state has been established which is threatened with impairment. Never having had a franchise, never having availed themselves of any permissive rights flowing from their incorporation, they cannot now be heard to complain. The permissive right of complainant Rapid Transit Underground Railway Company, which, as already stated, was incorporated April 9, 1897, to construct an underground road in the city of New York, has not expired. The acts of defendants commissioners, under the rapid transit act, cannot be construed to confer upon complainant any right or authority to construct an underground railroad specifically mentioned in the act. By the provisions of the rapid transit act, the privilege and franchise is to be sold at public auction

to a corporation organized and existing under that act. The averred unconstitutionality of the rapid transit act and the invalidity of the contract entered into by the defendants for the many reasons assigned in the bill seem to be sufficiently answered by the decision of the court of appeals of the state of New York in Sun Printing & Publishing Ass'n v. City of New York, 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788. The constitutionality of the rapid transit act is there established. The decision, being that of the highest tribunal of the state, is controlling upon this court. Adams Express Co. v. Ohio, 165 U. S. 219, 17 Sup. Ct. 305, 41 L. Ed. 683. It falls within the general rule that the construction of the state courts of last resort of state constitutions and statutes will ordinarily be accepted by the courts of the United States as controlling. Innumerable reasons are assigned by the bill to show that the municipality and the commissioners improperly contracted for the construction of the road. Their good faith is attacked. None of these reasons, however, justify federal interference by virtue of the fourteenth amendment to the constitution. French v. Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879. A tax of one-eighth per cent. upon the amount of capital required upon organization (Laws 1886, c. 143, as amended by Laws 1892, c. 668) can have no bearing upon the question at issue. That was a tax for the privilege of organizing a corporation for purposes specified in its charter. Payment of the tax can be given no other effect.

A further point is made by complainants that the unconstitutionality of the rapid transit act is attested by reason of provisions which are claimed to be a denial to the complainant of the equal protection of the laws. Const. U. S. 14th Amend. The rapid transit act does not arbitrarily authorize the commissioners to contract with the contractors to the exclusion of others. As before stated, the act in terms authorizes the rapid transit board to contract "with any person, firm or corporation which in the opinion of the board shall be best qualified to fulfill and carry out such contract, for the construction of such road or roads upon the routes and in accordance with the plans and specifications so adopted, for such sum or sums of money, to be raised and paid out of the treasury of said city, as hereinafter provided, and on such terms and conditions not inconsistent with the aforesaid plans and specifications as said board shall determine to be best for the public interest." Section 34. No particular person, class of persons, or corporation is excluded from the privilege of contracting for the construction and operation of the proposed railroad. All may compete. Therefore the state has not denied to complainant the equal protection of the laws under the fourteenth amendment. Kentucky R. R. Tax Case, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805, 43 L. Ed. 91. Other more extended discussion of questions presented would serve no beneficial purpose. In the view taken no federal question is involved which entitles the complainants to redress in the courts of the United States. The demurrers of the defendants on the ground of want of jurisdiction are sustained.

The complaint is dismissed, without costs.